OPINION OF THE COURT
Carol H. Arber, J.
This is a CPLR article 78 proceeding which seeks an order of mandamus compelling the respondents Rudolph Giuliani, Mayor of the City of New York, City of New York (City) and City University of New York (CUNY) to maintain its contributions to CUNY community colleges at a level comparable to the previous fiscal year.
Petitioners are students who attend two-year community colleges in the respondent CUNY system. Respondent Rudolph Giuliani is the Mayor of the City of New York. Respondent City of New York is the local sponsor of the community colleges in New York City under Education Law, article 126, § 6301 et seq. Respondent CUNY operates the community colleges attended by petitioners. The six community colleges in CUNY are: Borough of Manhattan Community College, Bronx Community College, Hostos Community College, Kings-borough Community College, La Guardia Community College, and Queensborough Community College.
The petitioners allege that the City intends to reduce the funding it provides to these schools by $7 million. Petitioners argue that the City’s budget reductions for funding the com *1022 munity colleges is contrary to the Education Law. Accordingly, petitioners have commenced this CPLR article 78 proceeding seeking an order directing the City and Mayor Giuliani to provide a contribution to CUNY in an amount equivalent to its contribution for Fiscal Year (FY) 1994, or, alternatively, to direct respondent CUNY to lower the 1994-1995 tuition for petitioners to one third of the operating costs pursuant to section 6304 (1) (d) of the Education Law; in addition, petitioners ask the court to direct the respondents City and the Mayor to pay their full share of the CUNY community college budget pursuant to Education Law § 6304 (1) (0.
The City and the Mayor oppose the relief sought and urge that petitioners fail to understand the City’s budget and the Mayor’s proposed adjustments to the current fiscal year budget. Respondents argue that when properly calculated, the City’s contribution to the operating budget of the six community colleges in New York City for 1995 is no less than the comparable amounts for the previous fiscal year. Accordingly, the City contends that it is in full compliance with its mandate under the Education Law in the amount of funding it will provide CUNY community colleges in FY 1995, and therefore, the petition should be denied.
Respondent CUNY indicated that it did not agree with petitioners or respondents and that its view of the budget differed from both of the other parties. Based on respondent CUNY’s calculations, CUNY asserts that the City must provide $75.2 million to the community colleges in order to maintain compliance with the Education Law requirements.
Under the law, Community colleges are supported by tuition and fees up to one third of their operating budget each year, with the State and the "local sponsor” putting up another one-third each. The "local sponsor” for CUNY two-year colleges is the City of New York. If a community college maintains a "program of full opportunity”,* [1] the State must pay 40% of the operating budget of the community colleges. Consequently, the local sponsor’s contribution may then be reduced from one-third to four-fifteenths, or 26.7%, and the *1023 students of the college provide, through tuition payments, the balance of 33.3%.
The standards and regulations for the financing of CUNY community colleges is set forth in Education Law § 6304 (1), which provides in pertinent part:
"(a) State financial aid shall be one-third of the amount of operating costs, as approved by the state university trustees * * * Such aid for a college shall, however, be for two-fifths of operating costs for any fiscal year of the college during which it is implementing a program of full opportunity * * *
"(c) The local sponsor or sponsors shall provide * * * one-third or, in the case of a college implementing a program of full opportunity for local residents, four-fifteenths of the operating costs * * *
"(d) Tuition and fees charged students shall be fixed so as not to exceed in the aggregate more than one-third of the amount of operating costs of the community college.”
In recent years the funding scheme has been modified through legislative enactments. In 1994, the Legislature, as part of its budget legislation, enacted a waiver of the one-third cap on the amount CUNY could charge for tuition, on condition that the City’s contribution was not less than the comparable amounts for the previous fiscal year. Section 56 of chapter 169 of the 1994 Laws of New York codifies the waiver provision and states in pertinent part: "Notwithstanding the provisions of paragraph d of subdivision 1 of section 6304 of the education law, pursuant to standards and regulations of the state university trustees and the city university trustees for the college fiscal year 1994-95, community colleges may increase tuition and fees above that allowable under such paragraph d. Such standards and regulations shall require that in order to exceed the tuition limit otherwise set forth in the education law, local sponsor contributions either in the aggregate or for each full-time equivalent student shall be no less than comparable amounts for the preceding year.”
Accordingly, pursuant to section 56 of chapter 169, commonly referred to as the Maintenance of Effort Law, the tuition and fees for the students may exceed the one-third limitation mandated by section 6304 (1) (d) only if the City’s contribution to the community college is no less than the amount contributed the preceding year.
According to the affidavit of Robert E. Diaz, General Counsel for CUNY, between 1988-1989 and 1994-1995 enrollment at *1024 the community colleges grew from 57,818 to 73,823, a 28% increase, but at the same time the City’s contribution to the colleges decreased by 36%, from $122 million to $78.5 million. During this period, tuition at the CUNY community colleges increased more than 71% from $1,225 to $2,100 per year for a full-time City resident student. At the argument of this application it was conceded that this tuition is higher than 95% of the community colleges in the country and at the highest level in the State of New York.
In FY 1993-1994, the City budget in the aggregate was $79.1 million for the community colleges, and the City spent $1,332 per full-time equivalent student (FTE). The budget originally approved by the Mayor for FY 1994-1995 budgeted in the aggregate $79.1 million for the community colleges. The aid per FTE for 1994-1995 was $1,333 per FTE, based upon an enrollment of 56,456.[2]
During the current fiscal year, the City announced its intention to modify the community colleges budget cuts by implementing over $10 million in budget cuts. On December 15, 1994, the City asked CUNY to submit plans absorbing an anticipated 1% cut ($879,000) and on January 6, 1995, the City asked CUNY to submit plans absorbing an additional 3% cut ($2.6 million). At this time, this combined cut of $3.5 million to CUNY has not been implemented by the City. On December 30, 1994 the City advised CUNY that it was impounding $7 million from the community college budget. On January 18, 1995, CUNY was notified that the $7 million impoundment was reduced $2.9 million. Accordingly, at the present time the City has reduced the community college operating budget by $4.1 million.
Petitioners contest the manner in which the City has calculated the $2.9 million back into the CUNY budget, and they argue that it is an illegal conveyance that does not reduce the amount of the impoundment. The petitioners argue that with the impoundment of $7 million, the City is in violation of the maintenance of effort provision of law contained in section 56 of chapter 169 of the Laws of 1994.
The City respondents contend that the figures used by the petitioners to calculate the community college budget allocations for FY 1995 are erroneous and that according to the *1025 City’s calculations its FY 1995 contribution to the community colleges has not fallen below the comparable amount for FY 1994, with or without the impoundment. Therefore the City argues it is in full compliance with all applicable laws on community college funding and the instant CPLR article 78 proceeding should be dismissed.
The City respondents also argue that petitioners are not entitled to mandamus relief because petitioners seek to compel action that is not required by law and therefore involves the exercise of discretion. The City argues that the statute does not require it to maintain comparable funding from year to year.
In the present case the legal requirements set forth in chapter 169 of the Laws of 1994 are unequivocal. The statute mandates that the City’s contribution to CUNY community colleges "in the aggregate or for each full-time equivalent student shall be no less than comparable amounts for the preceding year. ” (L 1994, ch 169, § 56; emphasis added.) If this condition is not met, then CUNY cannot require students to pay more than one third of the costs in tuition and the City must pay its full share of 26.7% as required pursuant to Education Law § 6304 (1) (c). A mandamus to compel action is appropriate where the act sought to be compelled does not involve the exercise of judgment or discretion. (Matter of County of Fulton v State of New York, 76 NY2d 675 [1990].)
This court disagrees with the City’s argument that providing comparable funding from year to year is in its discretion. Accordingly, this matter is appropriate for CPLR article 78 review and the question for this court to determine is whether the City’s announced FY 1995 contribution to the CUNY community colleges has fallen below the standard set forth in the Maintenance of Effort Law.
In order to make this determination, a hearing was held before this court on January 23, 1995 and the following persons gave testimony to the court: Richard Rothbard, the Vice Chancellor for Budget, Finance and Information Services at CUNY; and Richard F. Francan, the Assistant Director of the New York City Office of Management and Budget (OMB). At the hearing, the parties offered testimony in support of their respective calculations of the City’s contribution.
At the hearing, Assistant Director of OMB, Richard F. Francan, testified that the City was authorized to make certain adjustments or impoundments when determining the *1026 amount to allocate to the CUNY community colleges. The City claims that such an adjustment is appropriate because in FY 1994, the City was supporting seven community colleges, and in FY 1995, it is supporting only six. Since Medgar Evers College changed from a two-year community college to a four-year senior college, the City contends it need not consider amounts allocated to Medgar Evers in FY 1994 in FY 1995 budget calculations. In FY 1994, the City’s total contribution was $96,170,000. The FY 1995 budgeted contribution of $110,140,000 therefore exceeds the FY 1994 amount by $13,972,000. Accordingly, the City claims its FY 1995 budgeted contribution, adjusted to show the change from seven to six colleges, exceeds the FY 1994 amount by at least $13 million. Therefore, the City urges that the $7 million impoundment is not only proper but still allows them to make further budget cuts and still be in compliance with the Maintenance of Effort Law.
Petitioners called CUNY Vice Chancellor Rothbard to testify and based on his testimony argue that the reclassification of Medgar Evers College does not justify reducing the funding because the City is required to maintain the level of support from the previous fiscal year based on the number of full-time equivalent students attending community colleges, regardless of the number of campuses that are operated.
Petitioners also argue that the City should not be permitted to offset the budget cuts by impounding $2.9 million from the Citywide Debt Service Agency, which represents surplus funds for the City University Construction Fund. Petitioners claim that this is in essence an accounting "slight of hand”, which would allow the City to evade the maintenance of effort standard and permit an illegal budget cut by having agencies convey assets or capital to the municipality. Petitioners contend that the $2.9 million transfer from CUNY to the City is a reduction of the City’s support for CUNY, which should be subtracted from the City’s budget level of support.
Based on testimony elicited at the hearing, respondent City argues that it should be permitted to make calculations for this year’s budget based on the actual expenditures it made in FY 1994 as opposed to amounts contained in the FY 1994 budget.
In contrast, respondent CUNY argues that in order to meet the maintenance of effort standard mandated in the Waiver Law, the City’s contribution to community colleges in FY *1027 1994-1995 would have to be either, in the aggregate, or for each full-time equivalent student, no less than the amounts budgeted[3] for the previous fiscal year.
In FY 1993-1994, the City budget in the aggregate was $79.1 million for community colleges. The FY 1994-1995 budget, after the $4.1 million reduction, has been budgeted in the aggregate for $75.4 million. Accordingly, CUNY agrees with petitioners that on the aggregate basis the City is not in compliance with the Maintenance of Effort Law.
However, the Maintenance of Effort Law specifically permits the calculations to be considered on an alternative basis; which is on a dollars per student basis. (See, L 1994, ch 169, § 56.) When the City’s intended contribution for FY 1995 is analyzed based on the amount spent per full-time equivalent student, on a system-wide basis, the figures, CUNY argues, break down according to the following schedule:
In FY 1994-1995, the City spent $1,332 per FTE. Applying this rate to the FTE’s budgeted for FY 1994-1995, City support in 1994-1995 would have to be $75.2 million to meet the maintenance of effort standard.
CUNY contends that the City has met this floor amount by permitting CUNY to use $2.9 million in debt service savings, $800,000 of pension surplus savings, and $600,000 in energy savings to offset the impact of $4.1 million reduction. Accordingly, CUNY concludes that the City, in agreeing to provide $75.2 million in FY 1995, has met its requirement.
Petitioners instituted this proceeding seeking an order directing the Mayor to provide the equivalent of the 1993-1994 budget or an order directing respondent CUNY to lower tuition based on the City’s failure to maintain its share of financing.
Based on the testimony at the hearing, petitioners succeeded in establishing that the respondent City has not met its obligation in setting its FY 1995 contribution when compared with FY 1994 on an aggregate dollars basis. However, the Maintenance of Effort Law specifically permits the City to base its calculations, either on the aggregate or in the alternative on a dollars spent per FTE. When the calculations offered by CUNY based on FTE are examined, the City’s contribution of $75.2 million meets the minimum requirements of the Maintenance of Effort Law. However, the court *1028 finds based on the respondent CUNY’s calculation that the City’s contention that it has exceeded its mandatory contribution is without merit.
Based on the foregoing discussion, petitioners have failed to establish that they are entitled to the relief sought. The petition is therefore dismissed.

. A program of full opportunity as defined within Education Law § 6304 (1) (a) (i) offers acceptance to all college applicants who live within New York City who graduated from high school in the prior year or to high school graduates who were released from the United States Armed Forces in the prior year, and providing remedial education programs to meet the needs of all the students served by the college.

. The enrollment during 1993-1994 for community colleges was 59,418. The 1994-1995 drop in enrollment is a result of the reclassification of Medgar Evers College as a four-year college for the 1994-1995 fiscal year.

. As opposed to amounts actually spent in the previous fiscal year.