OPINION OF THE COURT
Carol H. Arber, J.
This CPLR article 78 proceeding was commenced by five community college students against respondents Rudolph Giuliani, Mayor of the City of New York, City of New York (City), the City University of New York (CUNY), the City University Construction Fund (Construction Fund or CUCF) and the State of New York based on the allegation that the budget enacted by the City in June 1995 and the community college tuition increase subsequently passed by the CUNY Board of Trustees violates the Laws of 1995 (ch 83, § 353). Petitioners also contend that respondents’ improper financial maneuvers have deprived both CUNY and its students of funds that would permit it to function without tuition increases.
Respondent CUNY operates six community colleges: Borough of Manhattan Community College, Bronx Community College, Hostos Community College, Kingsborough Community College, LaGuardia Community College, and the Queensborough Com *365 munity College. On June 26, 1995, the CUNY Board of Trustees raised the annual tuition charge at the community colleges by $400 to $2,500.
The combined enrollments of the community colleges continue to grow each year and now stand at over 70,000 students. Of these, 56% come from homes with a per capita income of less than $8,000 a year. Sixteen percent of the students come from homes receiving public assistance. Thirty percent of the students support children and 13% are single heads of households. The students are predominately minority: 38% are Black, 28% are Latino, and 9% are Asian.
The standards and regulations for the financing of CUNY community colleges are set forth in Education Law § 6304 (1), which provides in pertinent part:
"a. State financial aid shall be one-third of the amount of operating costs, as approved by the state university trustees * * * Such aid for a college shall, however, be for two-fifths of operating costs for any fiscal year of the college during which it is implementing a program of full opportunity * * *
"c. The local sponsor or sponsors shall provide * * * one-third or, in the case of a college implementing a program of full opportunity for local residents, four-fifteenths of the operating costs * * *
"d. Tuition and fees charged students shall be fixed so as not to exceed in the aggregate more than one-third of the amount of operating costs of the community college.”
The law requires that community colleges be supported by tuition and fees up to one third of their operating budget each year, with the State and the "local sponsor” putting up another one third each. The "local sponsor” for CUNY two-year colleges is the City of New York; however, if a community college maintains a "program of full opportunity”, [1] the State must pay 40% of the operating budget of the community colleges, and the local sponsor’s contribution is four fifteenths, or 26.7%, and the students of the college provide, through tuition payments, the balance of 33.3%.
In recent years the funding scheme has been modified through legislative enactments. In 1995, the Legislature, as *366 part of its budget legislation, enacted a waiver of the one-third cap on the amount CUNY could charge for tuition, on condition that the City’s contribution was not less than the comparable amounts for the previous fiscal year. Section 353 of chapter 83 of the Laws of 1995 (commonly referred to as the Maintenance of Effort Law) codifies the waiver provision and states in pertinent part: "Notwithstanding the provisions of paragraph d of subdivision 1 of 6304 of the education law, pursuant to standards and regulations of the state university trustees and the city university trustees for the college fiscal year 1994-95, community colleges may increase tuition and fees above that allowable under such paragraph d. Such standards and regulations shall require that in order to exceed the tuition limit otherwise set forth in the education law, local sponsor contributions either in the aggregate or for each full-time equivalent student shall be no less than comparable amounts for the preceding year.” (L 1995, ch 83, § 353.)
Pursuant to chapter 83, § 353, the tuition and fees for the students may exceed the one-third limitation mandated by section 6304 (1) (d) only if the City’s contribution to the community colleges is no less than the amount contributed the preceding year.
In January 1995, five students from community colleges of CUNY commenced an article 78 proceeding entitled Matter of Camilo v Giuliani (163 Misc 2d 1020) contending that that City’s Fiscal Year (FY) 1995 contribution to CUNY community colleges was less than comparable amounts for the prior fiscal year and thereby contrary to law.[2] The City opposed the relief sought and argued that petitioners were not entitled to mandamus relief because petitioners sought to compel an action that was not required by law and that in any event the City was in full compliance with all applicable laws on community college funding.
By memorandum decision and order dated January 30, 1995, this court held that: (1) the relief sought by petitioners was appropriate for article 78 review in that the City’s obligation to maintain comparable funding for community colleges is not a discretionary act but is mandated by Education Law § 6304 (1) (c); and (2) in order to be in compliance with the Maintenance of Effort Law the City was required to provide a contribution of $75.2 million to CUNY.
*367 In the proceeding that is presently before this court, all the parties agree that the City is required to allocate at least $75.2 million in the current 1995-1996 fiscal year to support the operating budgets of the CUNY community colleges. However, petitioners have commenced this proceeding arguing that the City has ignored its legal obligations in that the respondents have engaged in a series of improper transfers of funds designed to enable the City to evade the Maintenance of Effort requirement.
On June 14, 1995, the City Council passed a budget which allocated $65.9 million for the support of the operating budget of the CUNY community colleges in 1996. Several weeks before, the State enacted a new Maintenance of Effort Law for FY 1996. Accordingly, the City was required to allocate at least $75.2 million to match its 1994-1995 level of support for the CUNY community colleges. It is undisputed that the budget passed by the City in June 1995 allocating $65.9 million in support for CUNY community colleges was not in compliance with the State Maintenance of Effort legislation.
On June 22, 1995, a meeting was held between representatives of the New York City Office of Management and Budget (OMB) and CUNY, and it was agreed that the City would increase its allocation to CUNY by $7.8 million. The City indicated that it would obtain most of this money from the CUNY Construction Fund.
The City University Construction Fund is a public benefit corporation created in 1966 to provide for the construction and/or renovation of CUNY facilities. (L 1966, ch 782, § 4, amended L 1979, ch 305, § 2.) While the bonds pertaining to a particular facility are outstanding, the facility is owned by the Dormitory Authority of the State of New York (Dormitory Authority), which leases it to the Construction Fund for CU-NY’s use. The Construction Fund pays what is characterized as "rent” for the facilities in an amount that is determined to enable the Dormitory Authority to meet its debt service obligations on the bonds for that facility, as well as its administrative expenses. The annual rental obligation to the Dormitory Authority is the debt service on bonds issued by the Dormitory Authority.
Section 6279 (2) and (4) provide that the State must pay all rentals due for senior college facilities and one half of the aggregate rentals for community college facilities. The Construction Fund obtains the money to pay the debt service or rentals from the City and the State. Pursuant to Education Law § 6279 *368 (2) and (5), the City is required to pay to CUCF one half of the aggregate of all. such rentals due pursuant to leases for community college facilities.
Under the terms of the agreements between CUNY, the Dormitory Authority, and the Construction Fund, the tuition collected by CUNY is held by the Construction Fund as collateral to insure payment of the debt service or rentals. The tuition is transferred back to CUNY when the money is received from the City and the State to pay for the debt on the Dormitory Authority bonds.
Pursuant to Education Law § 6274 (7) the Construction Fund issues "certificates” to the City and the State indicating the amount of money that they must pay for the debt service. The City and State pay their share to the Construction Fund which in turn makes the "rental” payments to the Dormitory Authority.
The tuition that has been held as collateral is invested by the Construction Fund. The interest then builds up in a reserve fund that is, in part, used to pay the administrative and operating costs of the Construction Fund. The distribution of funds held by the Construction Fund in excess of what is needed to pay the debt service and other obligations to the Dormitory Authority is the focus of petitioners’ request for relief.
On September 8, 1995, the CUCF trustees passed a resolution authorizing the use of $5.1 million of the Fund’s excess reserves to pay part of the City’s obligation on the community college bonds and authorizing a payment of $3.9 million to reduce the State’s obligation. In anticipation of receiving this credit, the City Council amended the City 1995-1996 budget on September 19, 1995 to transfer $7,844 million from the City Debt Service Agency to CUNY. The agenda of the CUCF trustees meeting scheduled for September 28, 1995 included a proposed amendment to CUCF’s 1995-1996 certificate reducing the City and State payments by the aforementioned amounts and providing that CUCF would make those rental payments to the Dormitory Authority on behalf of the City and the State.
Petitioners urge the following arguments upon the court:
First, petitioners maintain that the trustees of the Construction Fund violated sections 6279 and 6278 of the Education Law by voting to use $5.1 million of the CUCF’s excess reserves to reduce the City’s debt service payments. Petitioners maintain that this money could only have been transferred directly to CUNY by the Construction Fund.
*369 Second, even if the $5.1 million transfer was not prohibited by section 6279, the transaction is nothing more than an indirect transfer of funds from the Construction Fund to CUNY with the City acting as a third-party intermediary. Consequently, petitioners maintain that the $5.1 million transfer is an attempt by the respondents to enable the City to evade the Maintenance of Effort requirement by intercepting money which would normally be available for CUNY by claiming those funds in partial satisfaction of the City’s Maintenance of Effort requirement.
Third, even if all the prior questions were resolved in the respondents’ favor, petitioners maintain that the City has still only allocated a maximum of $73.7 million for CUNY and is at least $1.5 million below the minimum Maintenance of Effort level of $75.2 million.
Finally, petitioners assert that the $400 community college tuition increase, which was enacted by the CUNY Trustees on June 26, 1995, was illegal because the City was not in compliance with the State’s Maintenance of Effort requirement when the tuition increase was enacted. Moreover, petitioners further maintain that the increase exceeded necessity.
In undertaking an analysis of these issues the court must first determine what the funding obligations of the State and City are vis-a-vis the Construction Fund.
The obligation of the State to make payments to the Construction Fund is set forth in Education Law § 6279 (1) and (4) which provide in relevant part as follows:
"(1) The state shall, in addition to any other state financial assistance, annually appropriate and pay to the fund an amount equal to the aggregate of all rentals and such other payments due to the dormitory authority from the fund pursuant to any lease, sublease or other agreement entered into between the dormitory authority and the fund prior to July first, nineteen hundred eighty-five or pursuant to any agreement supplemental thereto, pursuant to which the fund and the dormitory authority provide senior college facilities * * *
"The state shall, in addition to any other state financial assistance, annually appropriate and pay to the fund an amount equal to one7half the aggregate of all rentals and such other payments due to the dormitory authority from the fund pursuant to any lease, sublease or other agreement entered into between the dormitory authority and the fund prior to July first, nineteen hundred eighty-five or pursuant to any agreement *370 supplemental thereto, pursuant to which the fund and the dormitory authority provide community college facilities * * *
"(4) The state shall, in addition to any other state financial assistance, annually appropriate and pay to the fund for the benefit of the city university an amount equal to the aggregate of all rentals and other payments due to the dormitory authority from the fund on account of senior college facilities and one-half of all rentals and other payments due to the dormitory authority from the fund on account of community college facilities, which rentals and other payments are payable by the fund pursuant to any lease, sublease or other agreement entered into between the dormitory authority and the fund on or after July first, nineteen hundred eighty-five.”
The City’s obligation to provide one half of the funding for community college facilities is set forth in Education Law § 6279 (2) and (5):
"(2) The city shall, in addition to any other city financial assistance, annually pay to the fund an amount equal to one-half of the aggregate of all rentals and such other payments due to the dormitory authority from the fund pursuant to any lease, sublease or other agreement entered into between the dormitory authority and the fund prior to July first, nineteen hundred eighty-five or pursuant to any agreement supplemental thereto * * * provided, further, that the amount required to be paid to the fund by the city at any time on account for the rentals and such other payments due to the dormitory authority from the fund pursuant to any lease, sublease or other agreement entered into between the dormitory authority and the fund prior to July first, nineteen hundred eight-five or pursuant to any agreement supplemental thereto, pursuant to which the fund and the dormitory authority provide senior college facilities, shall be reduced by an amount equal to the amount by which the payment made by the state pursuant to the first paragraph of subdivision one of this section on account of such lease, sublease or other agreement exceeds one-half of the amount required to be paid by the state on account of such lease, sublease or other agreement * * *
"(5) The city shall, in addition to any other city financial assistance, annually appropriate and pay to the fund for the benefit of the city university an amount equal to one-half of the aggregate of all rentals and such other payments due to the dormitory authority from the fund on account of community college facilities pursuant to any lease, sublease or other agreement entered into between the dormitory authority and the fund on or after July first, nineteen hundred eighty-five.”
*371 Petitioners argue that the clear and unequivocal language of section 6279 requires that the State and the City must each pay the Construction Fund half of the payments due from the Construction Fund to the Dormitory Authority for projects at CUNY’s community colleges and that the State must pay the Construction Fund all payments due to the Dormitory Authority for construction of senior college facilities.
The court agrees with petitioners that the plain meaning of section 6279 requires: (1) payments from the City of New York in the amount of approximately half of the community college debt service; and (2) payments from the State of New York of the other half of the community college debt service and 100% payment of the debt service for senior colleges.
The next question for this court to determine is whether excess funds earned by the Construction Fund may be used to pay rental obligations to the Dormitory Authority, thereby reducing the amount of debt service, or whether such funds must be as petitioners argue specifically reserved for CUNY only.
Respondent Construction Fund argues that it is obligated by statute, and pursuant to the agreement it has entered into with the Dormitory Authority to pay "rentals” or the debt service on bonds issued by the Dormitory to finance the acquisition and construction of CUNY facilities. However, the Construction Fund contends it may in its discretion apply all or part of its excess income from investment earnings to the payment of rental obligations to the Dormitory Authority.
Section 6278 (a) of the Education Law provides that the funds received by the Construction Fund shall be invested. This section delineates the sources of funds for the Construction Fund including the tuition (para [3]) and the payments from the State and City (paras [1], [2]). Also included in the resources of the Fund are other donations or additional appropriations (para [4]). Subdivision (a) provides that the Construction Fund shall "invest” these resources.
Subdivision (b) of section 6278 then provides direction to the Fund on what to do with excess monies: "All city university instructional and noninstructional fees received by the fund which, together with other moneys of the fund available for payment of rentals and other payments due to the dormitory authority * * * pursuant to any lease, sublease, or other agreement entered into between the dormitory authority and the fund, exceed the amount required by the terms of any lease, sub-lease or other agreement with the dormitory authority to *372 be retained for the payment of such rentals and such other payments and the costs of administration of such fund shall be transferred to the city university for the support, maintenance and operation of such university.”
The CUCF argues that section 6278 (b) of the Education Law does not obligate the CUCF to transfer to CUNY any part of the Construction Fund’s investment earnings, or any other Construction Fund resources other than the "city university instructional and noninstructional fees received by the fund”. CUCF does not interpret the Education Law as requiring it to transfer to CUNY all financial resources in excess of those needed to meet its rental obligations and operating expenses. CUCF further urges that the long-standing interpretation of the statute by CUCF, as the public authority charged with the administration of the statute, should be accorded great deference.
The CUCF was created by the Legislature (L 1966, ch 782, § 4) as a "public benefit corporation”, to provide facilities for CUNY and to support the educational purposes of the City University. Although created by the State and subject to dissolution by the State, public benefit corporations are independent and autonomous, deliberately designed to be able to function with a freedom and flexibility not permitted to an ordinary State board, department or commission. (Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth., 5 NY2d 420, 423 [1959], citing State & Local Government in NY, 1938 Report of NY Constitutional Convention Comm Report, Vol 4, at 189 et seq.) It has also been recognized that public authorities were created and designed: " 'to resemble in many respects a private business corporation * * * They operate on a business basis, and have complete control over * * * their own organization and methods of operation’ (11 Report of Constitutional Convention Committee, 1938, Problems Relating to Home Rule & Local Government, p 238 * * *).” (Collins v Manhattan & Bronx Surface Tr. Operating Auth., 62 NY2d 361, 368 [1984].)
This court finds that section 6278 (b) is clear in its mandate that all City University tuition "together with” other funds which exceed the amounts necessary for the costs of rentals and other costs attributable to the administration of the CUCF "shall be transferred to the city university for the support, maintenance and operation of such university”. However, the court also recognizes the well-established precedent that provides public benefit corporations, such as CUCF, with great *373 flexibility in its methods of operation. (Collins v Manhattan & Bronx Surface Tr. Operating Auth., supra.)
In addressing the level of discretion the CUCF is permitted with regard to administering the assets of the Fund, this court is mindful that there is little authority either in the form of legislative history or case law to provide guidance. There is, however, the Education Law which gives the CUCF authority to expend the resources of the funds for its corporate purposes.
Section 6276 (a) authorizes the Construction Fund to "apply to the payment of rentals and other payments required from the fund by any such leases, subleases or other agreements and may pledge as security for such payments to the dormitory authority * * * all or part of the resources of the fund”. Section 6278 (a) also permits the Construction Fund to "expend and disburse for its corporate purposes all monies for the city university construction fund from whatever sources derived”.
Based on the authority accorded CUCF by the Education Law, the court finds that the trustees of CUCF have the authority to meet the Construction Fund’s rental obligations to the Dormitory Authority and to make expenditures for the Construction Fund’s corporate purposes from any source of earnings, including the use of investment earnings to reduce the City’s debt service obligation.
However, "discretion” must not be viewed as a carte blanche. The action of CUCF in using its investment income to pay its rental obligations to the Dormitory Authority thereby reducing the amount of money that the City would otherwise have to pay to the Construction Fund for debt service is within the authority given to CUCF in Education Law § 6278 (a) and § 6276 (a) and CUCF’s mandate: to provide and maintain facilities for the City University. Nevertheless, CUCF cannot disregard Education Law § 6278 (b) which requires that any excess funds remaining after "payment of * * * rentals and such other payments and the costs of administration of [the] fund” shall be transferred to CUNY.
In order to succeed in an article 78 proceeding, petitioners must establish that the actions taken by respondents are either arbitrary and capricious or in excess of their authority. Since the CUCF is entitled to both control over the Fund and flexibility in the methods by which it administers the assets of the Fund, petitioners have not established that the City’s transfer to CUNY of the $5.1 million which became available because of the reduction of a City obligation previously budgeted to the Construction Fund was contrary to the Education Law.
*374 However, even with the $5.1 million appropriation to CUNY, the City acknowledges that it is still $1.5 million short of the amount required under the Maintenance of Effort Law.
As part of the City’s contribution to CUNY in satisfaction of the "maintenance of effort” requirements the City agreed to assume the responsibility of paying for certain of the City University’s community colleges’ health insurance bills. These bills were created when approximately $1,475 million in health insurance bills came due after the close of the 1995 fiscal year for health insurance costs incurred prior to the close of the 1995 fiscal year. Another $402,000 in health care expenses also needed to be charged to CUNY’s 1996 fiscal budget to cover an unanticipated increase in health care costs.
While the City acknowledges its obligation to pay these extra health costs for CUNY, it is undisputed that it has not yet done so. Therefore, this $1.5 million payment remains merely a pledge and until the City actually transfers or makes an appropriate allocation of funds in its budget, the City has not met its statutory obligations under the Maintenance of Effort legislation.
The Maintenance of Effort Law allows CUNY to raise tuition and require students to pay more than one third of the operating expenses only if the City is in compliance with the Maintenance of Effort Law. Accordingly, this court finds that Fiscal Year 1995-1996 tuition increase is invalid unless and until the City appropriates $1.5 million to the CUNY community college budget. Based on this conclusion the respondents are prohibited from imposing an increase in tuition until it is in compliance with the Maintenance of Effort Law.
Lastly, petitioners have failed to establish any basis to support their contention that the $400 increase in tuition is excessive. Petitioners baldly assert that if the CUCF had transferred the $5.1 million directly to CUNY, a tuition increase in the amount of $100 is all that would have been required. This argument must fail in light of this court’s ruling that the $5.1 million appropriation to the City was not contrary to law. Accordingly, the tuition increase is not excessive based on CU-NY’s present operating budget.
Based on the foregoing the petition is granted to the extent that the City is enjoined from charging tuition in excess of one third of the operating budgets of the community colleges unless and until it provides CUNY with $1.5 million.

. A program of full opportunity as defined within Education Law § 6304 (1) (a) (i) offers acceptance to all college applicants who live within New York City who graduated from high school in the prior year or to high school graduates who were released from the United States Armed Forces in the prior year, and providing remedial education programs to meet the needs of all the students served by the college.

. In 1994, as part of its budget legislation, the State also passed Maintenance of Effort legislation, requiring that the City could not raise tuition amounts unless its contribution to CUNY community colleges was comparable to amounts provided for the previous year. (L 1994, ch 169, § 56.)