■ In the Matter of SYRACUSE UNITED NEIGHBORS, Appellant v CITY OF SYRACUSE et al., Respondents. — Order and judgment unanimously reversed, without costs, petition granted and matter remitted to Supreme Court, Onondaga County, for further proceedings in accordance with the following memorandum: Petitioner, a coalition of neighborhood associations, appeals from a judgment dismissing its article 78 petition which seeks data under the Freedom of Information Law (Public Officers Law, art 6) and seeks also to compel respondents to comply with the Open Meetings Law (Public Officers Law, art 7) in connection with the operations of committees known as the "Homestead Committee" and the "Mayor's Task Force on Abandoned Housing." Special Term found that the committees have no governmental capacity and thus are advisory only; that they were not created by respondent City of Syracuse and hence are not subject to the Freedom of Information Law; and that even if they are subject to such law, the information sought is exempt from disclosure under section 87 (subd 2, par [g]) of the Public Officers Law. Both committees are concerned with urban blight and resultant loss of tax revenue. The Homestead Committee is composed of several members of the common council and representatives of the departments of law, community development, finance and assessment. The committee developed a program by which the city sells residential properties to private citizens for a nominal consideration. Before a property which had been acquired by tax deed or otherwise is sold by the city, the committee determines the cost and feasibility of rehabilitation of the parcel, taking into consideration the homesteader's talent as a "do-it-yourselfer" and his ability to repay the needed financing. It selects from among interested applicants and makes an appropriate recommendation to the common council. The "Mayor's Task Force on Abandoned Housing" consists of members appointed by the Mayor on recommendation by the budget director and also includes representatives of the departments of law, community development, finance and assessment. The task force was created to review and recommend policies regarding the disposition or use of vacant and abandoned property. It determines whether abandoned housing should be referred to the homestead program or should be sold at public auctions, and it forwards its recommendations to the common council. Initially, we hold that respondent city is an agency as defined in the Public Officers Law (§ 86, subd 3) and that the requested documents of the two committees constitute records kept and held by respondent city within the meaning of that law (§ 86, subd 4). Respondents contend, however, that the materials are not subject to compulsory disclosure since they are interagency or intra-agency materials within the meaning of section 87 (subd 2, par [g]) of the Public Officers Law. The argument is without merit. Such materials are not exempt from disclosure when they are (1) statistical or factual tabulations or data; (2) instructions to staff that affect the public; or (3) final agency policy or determinations (Public Officers Law, § 87, subd 2, par [g]). Many of the documents sought to be disclosed contain both factual data and/or determinations of final policy or decisions. A list of these documents follows this memorandum and, after redaction consistent herewith, they must be disclosed (see Matter of Miracle Mile Assoc. v Yudelson, 68 AD2d 176). We next consider whether the meetings of these committees are subject to the Open Meetings Law which requires that meetings of a "public body" be open to the public. " 'Public body' " is statutorily defined as "any entity, for which a quorum is required" (Public Officers Law, § 97, subd 2). Section 41 of the General Construction Law establishes the quorum requirement in relation to the functions of public bodies which have power, authority and duty.

While neither of the committees here usurp the powers of other municipal departments and their recommendations may be characterized as advisory only, in that they did not bind the common council or other city departments it is clear that their recommendations have been adopted and carried out without exception. To hold that they are not public bodies within the meaning of the Open Meetings Law would be to exalt form over substance. Both committees perform vital governmental functions affecting the municipality and its citizenry and their recommendations receive the automatic approval of the common council. To keep their deliberations and decisions secret from the public would be violative of the letter and spirit of the legislative declaration in section 95 of the Public Officers Law *(Matter of Orange County Pub. Div. of Ottaway Newspapers v Council of City of Newberg,* 60 AD2d 409, affd 45 NY2d 947; see, also, amdt to Public Officers Law, § 97, subd 2, eff Oct. 1, 1979 [which added the words "committee or subcommittee or other similar body of such public body" to the definition of "public body"]). Thus the minutes of their meetings must be disclosed (Public Officers Law, § 101, subd 3). It is obvious, however, that the committees operated either in ignorance of the Open Meetings Law or in the belief that they were not subject to it. It is readily apparent that the minutes are far more extensive than those required to be kept either at regular sessions (Public Officers Law, § 101, subd 1) or executive sessions (§ 101, subd 2). Subdivision 2 of section 101 provides that the minutes "need not include any matter which is not required to be made public by the freedom of information law". Since the minutes here were clearly made without contemplation of public exposure and contain information which impinges upon the privacy of various individuals, the matter should be remitted to Supreme Court for its *in camera* redaction thereof consistent with the provisions of the Freedom of Information Law and the Open Meetings Law (Public Officers Law, § 101, subd 2; § 89, subd 2; § 87, subd 2, par [b]; see *Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575). The following documents must be disclosed: *Homestead Committee.* 1. Document entitled "Proposed Homestead Program" dated August 10, 1977; 2. Application form, and Attachments A and B to minutes, October 19, 1977; 3. Postdecision memorandum, January 18, 1978; 4. Memorandum, February 24, 1978; 5. Rochester newspaper article attached to meeting notice, February 23, 1978, and 6. Memorandum attached to meeting notice dated May 10, 1978, which lists properties already included in the homestead program. *Mayor's Task Force on Abandoned Housing.* 1. Acquisition and disposition procedures, attached to September 13, 1978 agenda; 2. Auction of October 18, 1978 — fact sheet; 3. Program costs, attached to agenda for November 2, 1978; 4. Proposed time line for city acquisition policy, attached to agenda for November 2, 1978; 5. Summary of delinquent tax trusts, Attachment No. 1, minutes of meeting, April 19, 1979; 6. Unencumbered properties for acquisition, attached to agenda, August 23, 1978; 7. Auction on abandoned properties, May 23, 1979, attached to agenda, July 12, 1979; 8. Summary of tax delinquent property, pp 1-11; Attachment No. 4; status of disposition programs, I. auction, all attached to July 12, 1979 agenda; 9. All memoranda and lists of properties attached to minutes of meeting, July 19, 1979; 10. List of properties included in memorandum dated September 13, 1979; 11. Memorandum attached to minutes of meeting, January 24, 1980; 12. Homestead and auction programs summary report, attached to April 24, 1980 minutes of meeting, and 13. Vacant tax delinquent structures lists attached to minutes of meetings, January 24, 1980 and April 24, 1980. (Appeal from

order and judgment of Onondaga Supreme Court — art 78.) Present — Dillon, P. J., Cardamone, Simons, Doerr and Moule, JJ.