*711 OPINION OF THE COURT
Bellacosa, J.
This case turns solely on a statutory interpretation question. The issue is whether the Fiorello H. LaGuardia Community College Association, Inc. (Association, Inc.) is subject to this State’s Open Meetings Law, as a public body that was performing a governmental function in the circumstances presented by this case. We hold that the Association, Inc. is a public body and is subject to Public Officers Law article 7.
L
LaGuardia Community College is one of six two-year colleges, operated pursuant to Education Law articles 125 and 126 by the City University of New York (CUNY). The Association, Inc. is an organization comprised of administrators, faculty members and students. It is authorized to review proposed budgets, to allocate student activity fees and to authorize disbursements. CUNY collects a student activity fee from all students as a condition of enrollment. The Association, Inc. maintains the student activity fees in an account in its name.
At a December 8, 1993 meeting, the Association, Inc. voted to suspend publication of a student newspaper, The Bridge. A subcommittee was designated to conduct an investigation into whether the newspaper violated any college by-laws governing student publications. This related to publication and distribution of an article in The Bridge containing offensive statements about Jews. Respondent Dean of Student Affairs, the presiding officer of the Association, Inc., disapproved a purchase order for the next issue of The Bridge. A suspension of the newspaper pending the investigation was put into effect.
On March 30, 1994, the Association, Inc. held a closed meeting — the one at issue in these proceedings — at which the *712 subcommittee submitted its investigation report. During that meeting, the Association, Inc. lifted the suspension but imposed restrictions on The Bridge, including a prepublication review by the Association, Inc. It also allocated student activity fees to several organizations for a variety of purposes.
Appellant Smith was student editor-in-chief of The Bridge. Smith and coappellant Maitland, a broadcast journalist, attempted to attend the March 30th meeting. Security guards prevented them from entering even beyond the lobby of the building where the meeting was being held. The Director of Security informed the two appellants that the meeting was closed by the Dean of Student Affairs who, as President of the Association, Inc., presided at the meeting.
Minutes of the March 30, 1994 meeting were circulated on April 5, 1994 to the Association, Inc.’s members, the College President, Smith, and the Faculty Advisor for The Bridge. They detailed the actions and appropriations made by the Association, Inc. On May 5, 1994, revised minutes of the March meeting were released to these same individuals, indicating that additional funds had been allocated at the meeting.
On August 3, 1994, Smith and Maitland commenced this combined CPLR article 78 proceeding and declaratory judgment action. They asserted that the Association, Inc.’s closure of its March 30, 1994 meeting, at which student activity fees were appropriated and restrictions were placed on The Bridge, violated New York State’s Open Meetings Law.
After a hearing, Supreme Court adjudged and declared that the Association, Inc. is a “public body” which violated the Open Meetings Law by holding the closed meeting on March 30, 1994; ordered that all future meetings of the Association, Inc. be conducted in accordance with the requirements of the Public Officers Law; annulled actions taken by the Association, Inc. at the meeting with regard to The Bridge; and determined that petitioners were entitled to costs and attorneys’ fees to be determined at a separate hearing. Supreme Court thereafter fixed costs and attorneys’ fees as of that point in the judicial proceedings.
The Appellate Division unanimously reversed, on the law, and dismissed the petition (241 AD2d 410). The court held that the Association, Inc. was not a public body. It also did not pass on the amount of the fees allowed by Supreme Court. In disagreeing with Supreme Court, the intermediate appellate court reasoned that the Association, Inc. performed merely an *713 advisory function and thus did not have final decision-making power over money allocations (id., at 413). The court added that the Association, Inc. did not exercise sovereign power because the funds it oversees, generated by student activity fees, are segregated, within its own account, from the University’s general revenues and, thus, do not constitute State funds (id.).
Petitioners’ appeal as of right on constitutional grounds was dismissed by this Court (91 NY2d 921), and we then granted their motion for leave to appeal. We now reverse and conclude that the Association, Inc. is a public body subject to the Open Meetings Law which it violated in these circumstances.
IL
The key Open Meetings Law provision declares “[e]very meeting of a public body shall be open to the general public,” except for executive sessions (Public Officers Law § 103 [a]). A “public body” is defined as:
“any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, * * * or committee or subcommittee or other similar body of such public body” (Public Officers Law § 102 [2]).
The Open Meetings Law is designed to ensure that public business is conducted in an observable manner; to promote this goal, the provisions of the Open Meetings Law are to be liberally construed (see, Matter of Gordon v Village of Monticello, 87 NY2d 124, 126-127).
We agree with Supreme Court on the cardinal question. In our judgment, the Association, Inc. performs substantially more than a mere advisory function with respect to college activities and expenditures and, therefore, exercises a quintessentially governmental function. In determining whether an entity is a public body, various criteria or benchmarks are material. They include the authority under which the entity was created, the power distribution or sharing model under which it exists, the nature of its role, the power it possesses and under which it purports to act, and a realistic appraisal of its functional relationship to affected parties and constituencies.
This Court has noted that the powers and functions of an entity should be derived from State law in order to be deemed *714 a public body for Open Meetings Law purposes (see, Matter of American Socy. for Prevention of Cruelty to Animals v Board of Trustees of State Univ. of N. Y, 79 NY2d 927, 929). In the instant case, the parties do not dispute that CUNY derives its powers from State law and it surely is essentially a public body subject to the Open Meetings Law for almost any imaginable purpose. The Association, Inc. contends, on the other hand, that it is a separate, distinct, subsidiary entity, and does not perform any governmental function that would render it also a public body.
It may be that an entity exercising only an advisory function would not qualify as a public body within the purview of the Open Meetings Law (see, Goodson Todman Enters. v Town Bd., 151 AD2d 642, 643, lv denied 74 NY2d 614; Matter of Poughkeepsie Newspaper Div. of Gannett Satellite Information Network v Mayor’s Intergovernmental Task Force on N. Y. City Water Supply Needs, 145 AD2d 65, 67; Matter of Daily Gazette Co. v North Colonie Bd. of Educ., 67 AD2d 803, 804). More pertinently here, however, a formally chartered entity with officially delegated duties and organizational attributes of a substantive nature, as this Association, Inc. enjoys, should be deemed a public body that is performing a governmental function (compare, Matter of Syracuse United Neighbors v City of Syracuse, 80 AD2d 984, 985, appeal dismissed 55 NY2d 995). It is invested with decision-making authority to implement its own initiatives and, as a practical matter, operates under protocols and practices where its recommendations and actions are executed unilaterally and finally, or receive merely perfunctory review or approval. This Association, Inc., therefore, is manifestly not just a club or extracurricular activity.
The conclusion by the Appellate Division that the Association, Inc. acted in a mere advisory role in the allocation of expenditures is, in any event, not supportable on this record. This Association, Inc. possessed and exercised real and effective decision-making power. CUNY, through its by-laws, delegated to the Association, Inc. its statutory power to administer student activity fees (see, Education Law § 6206 [7] [a]). The Association, Inc. holds the purse strings and the responsibility of supervising and reviewing the student activity fee budget (CUNY By-Laws § 16.5 [a]). CUNY’s by-laws also provide that the Association, Inc. “shall disapprove any allocation or expenditure it finds does not so conform, or is inappropriate, improper, or inequitable,” thus reposing in the Association, Inc. a final decision-making authority with respect to *715 budget conformance (id.). While authority is reserved in the particular College President to disapprove any authorized student activity fee or expenditure (CUNY By-Laws § 16.11), the President’s review of student activity fee expenditures is neither mandatory, nor regular, nor relevantly operative in this case. Further, the College by-laws do not allow the President the self-initiating power to appropriate monies that the Association, Inc. has not first recommended. Thus, the Association, Inc.’s decision not to appropriate monies is tantamount to the final determination of at least that kind of matter.
Importantly too, the Association, Inc. purports to possess and even exercised the power to suspend, regulate and reinstate student publications. It went so far as to direct a subcommittee to investigate The Bridge, and to impose restrictions on the newspaper when it reauthorized its publication. No other review or superior approval of these momentous decisions appear to be required from anyone else, including the President. In this regard, the Association, Inc. plainly functions as much more than an advisory board; it is powerfully and substantively autonomous, even beyond fiscal matters, as important as they are. All these features taken together render it a public body.
III.
The Appellate Division also ruled that the Association, Inc. does not exercise sovereign power because the funds it oversees are segregated from CUNY’s general revenues and thus do not constitute State funds. This conclusion challenges and even contradicts relevant precedent.
In Matter of Panarella v Birenbaum (32 NY2d 108), this Court addressed whether tax-supported colleges could be compelled to regulate the publication of articles grossly offensive to religion in newspapers financed from mandatory student fees. We considered whether CUNY’s collection of mandatory student fees, used in part for student newspapers, constituted public funding. We held that the “[u]se of State moneys to support the newspapers does no more to establish a religion or inhibit it” (id., at 116).
Similarly, in Rosenberger v Rector & Visitors of Univ. of Va. (515 US 819), the United States Supreme Court, while considering whether a public university’s denial of funding to a college newspaper with a Christian viewpoint violated the First Amendment of the Constitution, determined that the mandatory, nonrefundable funds assessed to each full-time student were public in nature (id., at 829-830). The Court concluded *716 that the student activity fund constituted a “public forum” within which the State could not exercise viewpoint discrimination (id.).
Here, the nature of the student activity funds resembles those examined in Panarella (supra) and Rosenberger (supra). Students at LaGuardia Community College were required to pay a nonrefundable student activity fee at the beginning of each semester in an amount established by CUNY’s Board of Trustees. Although these funds were isolated from CUNY’s general revenues, these mandatory student activity fees were garnered by the State and dedicated to support student expressive activities in a public university. These funds thus have the inescapable earmarks of public funds.
While Panarella (supra) and Rosenberger (supra) are relevant and helpful in resolving whether the student activity fees are public funds, they are not, in our view, otherwise pertinent to the disposition of the issues before this Court in this case. We are faced with a question involving solely a statutory violation of the Open Meetings Law. That is all we need to decide, and by our grant of leave to appeal that is all that is now before us. Thus, we view other allusions to Rosenberger by the parties, as well as the Appellate Division’s concern for distinguishing Rosenberger, as essentially beside the dispositional point.
IV.
Finally, insofar as appellants Smith and Maitland particularly contend that, by conducting public business in a closed session, the Association, Inc. also injured them by violating their First Amendment rights, their claims as to the March 30, 1994 meeting are barred by the Statute of Limitations prescription in CPLR 217 in those respects. These contentions arise solely from the Association, Inc.’s conduct in holding the closed meeting, and are to be distinguished from actions taken by the Association, Inc. at the closed meeting. Thus, the meeting-as-such claims accrued at the time Smith and Maitland were barred from entering the building and attending the meeting. That occurred on March 30, 1994, and they did not commence the present proceeding until August 3, 1994. Thus, these aspects of their claims are barred by the four-month Statute of Limitations set fprth in CPLR 217.
Appellants’ remaining claims, contesting the allocation of student activity funds during the March 30, 1994 meeting as improper and asserting that these actions injured Smith by wrongfully depriving him of a portion of his student activity *717 fee, are timely. They are governed by Public Officers Law § 107 (3) and are measured from the date the minutes of the March 30, 1994 meeting were released. Thus, the branches of relief granted petitioners and contained in Supreme Court’s judgment are warranted, and are essentially reinstated by us.
Finally, we remit this matter to Supreme Court for a recalculation of attorneys’ fees, particularly based on the additional appellate practice of the parties. Any further appeal of the original award of attorneys’ fees or the redetermination of attorneys’ fees or both would be a matter for the plenary review of the Appellate Division since that court never ruled on the particulars of the fee matter when it dismissed the entire case.
Accordingly, the order of the Appellate Division should be reversed, with costs, the judgment of Supreme Court reinstated, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.
Chief Judge Kaye and Judges Smith, Ciparick, Wesley and Rosenblatt concur; Judge Levine taking no part.
Order reversed, with costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.