*17 OPINION OF THE COURT
Gerald V. Esposito, J.
Relief Requested
By an amended verified petition and complaint, petitioners-plaintiffs petition this court for an order or judgment: (a) declaring that: (i) the Hostos College Senate is a public body performing a governmental function within the meaning of section 102 (2) of the Open Meetings Law (Public Officers Law §§ 100-111); (ii) the Hostos College Senate Executive Committee is a public body performing a governmental function within the meaning of section 102 (2) of the Open Meetings Law; (iii) the Hostos College Senate and the Executive Committee are agencies performing governmental functions for the state within the meaning of section 86 (3) of the Freedom of Information Law (Public Officers Law §§ 84-90); (iv) respondents violated the Open Meetings Law by prohibiting petitioners and others from attending the Hostos College Senate meeting of May 24, 2001 and the executive committee meeting of September 6, 2001; (v) respondents violated the Open Meetings Law and the Freedom of Information Law by voting by secret ballot at the May 24, 2001 meeting of the Hostos College Senate and failing to record the votes of members of the college senate as required by section 106 of the Open Meetings Law and section 87 (3) (a) of the Freedom of Information Law; (vi) article III, § 2 (d) of the Hostos Governance Charter requiring that the college senate vote by secret ballot violates the Open Meetings Law and the Freedom of Information Law and is therefore null and void; (b) ordering that: (i) respondents are to conduct future meetings of the college senate and the executive committee in accordance with the Open Meetings Law, and (ii) respondents shall keep records of the final vote of members of the senate and executive committee as required by the Open Meetings Law and the Freedom of Information Law; and (c) pursuant to Public Officers Law § 107 (2); § 89 (4) (c) and/or CPLR article 86, awarding petitioners costs and attorneys’ fees.
Background
At the times pertinent to this proceeding, petitioner Chong Kdm was a student at Hunter College, a college within the City University of New York (CUNY) system. Petitioner Aneudis Perez, at all times relevant to this proceeding, was a student at Hostos Community College, which is also part of the CUNY system.
*18 On May 24, 2001, petitioner Kim attempted to attend a meeting of the Hostos College Senate. It is alleged that his admission to this meeting had been barred by security guards who had informed him that meetings of the college senate were closed to outsiders. It is added that an attorney employed by Hostos College had indicated to Mr. Kim that the senate was not covered by the Open Meetings Law. Petitioners contend that at the meeting held on May 24, 2001, the senate had approved several changes in the curriculum, voting by secret ballot.
On September 6, 2001, petitioner Aneudis Perez attempted to attend a meeting of the Executive Committee of the Hostos Senate. It is alleged that Mr. Perez had requested permission to enter the meeting room to give a petition to a member of the executive committee who had previously agreed to present the petition to that committee to require the scheduling of an emergency meeting. It is asserted that admission to this meeting had been barred by a CUNY security officer and by Professor Elizabeth Errico, the chair of the college senate.
It is undisputed that neither the college senate during its meeting on May 24, 2001 nor the executive committee at its meeting on September 6, 2001 had moved into executive session at any point.
On July 9, 2001, Robert J. Freeman, Esq., Executive Director of the Committee on Open Government, issued an advisory opinion in response to a request by petitioners’ attorney as to whether the Senate of Hostos College is subject to the Open Meetings Law. The executive director, in his opinion, stated that it appears that the senate constitutes a public body subject to the Open Meetings Law. In a letter dated July 31, 2001, the general counsel for CUNY voiced his opposition to this advisory opinion. He argued that the analysis underlying that opinion was wrong, factually and legally. Objection was also raised to the fact that the opinion had been issued on an ex parte basis as CUNY had not been afforded an opportunity to be heard.
Statutes, Bylaws, Case Law
I. Pertinent Statutory Authority
Open Meetings Law
The Open Meetings Law of the State of New York is found in article 7 of the Public Officers Law, comprising sections 100 through 111. A legislative declaration is set forth in section 100 which states that “It is essential to the maintenance of a *19 democratic society that the public business be performed in an open and public manner * * Pursuant to section 102 (1), a “meeting” is defined as “the official convening of a public body for the purpose of conducting public business, including the use of videoconferencing for attendance and participation by the members of the public body.”
Pursuant to Public Officers Law § 102 (2), a “public body” is defined as “any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation as defined in section sixty-six of the general construction law, or committee or subcommittee or other similar body of such public body.”
Every meeting of a public body shall be open to the general public, with the exception of executive sessions (Public Officers Law § 103 [a]). Minutes shall be taken at all open meetings, and all votes shall be recorded (§ 106 [1]). These minutes shall be available to the public within two weeks from the date of such meeting (§ 106 [3]).
Pursuant to Public Officers Law § 107 (1), any aggrieved person shall have standing to enforce the provisions of the Open Meetings Law against a public body by the commencement of a proceeding pursuant to article 78 of the CPLR and/or by an action for declaratory judgment and injunctive relief. Under subdivision (2) of this section, costs and reasonable attorneys’ fees may be awarded by the court, in its discretion, to the successful party.
Freedom of Information Law
The Freedom of Information Law of the State of New York is found in article 6 of the Public Officers Law, comprising sections 84 through 90. A legislative declaration is set forth in section 84 and includes the following statement: “The legislature therefore declares that government is the public’s business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article.”
Pursuant to section 86 (3) of the Public Officers Law, an “agency” is defined as “any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for *20 the state or any one or more municipalities thereof, except the judiciary or the state legislature.” Under the provisions of section 87 (3) (a), each agency shall maintain a record of the final vote of each member in every agency proceeding in which the member votes.
A person denied access to a record may appeal this denial in writing, within 30 days, to the head, chief executive or governing body of the entity (Public Officers Law § 89 [4] [a]). A person denied access to a record in such an appeal determination may bring a proceeding for review of such denial pursuant to article 78 of the CPLR (§ 89 [4] [b]). The court in such article 78 proceeding may assess, against the agency involved, reasonable attorneys’ fees and other litigation costs reasonably incurred where the petitioner has substantially prevailed, provided that such attorneys’ fees and litigation costs may be recovered only where the court finds that the record involved was, in fact, of clearly significant interest to the general public, and the agency lacked a reasonable basis in law for withholding the record (§ 89 [4] [c]).
Education Law
Respondent CUNY is a public university operated under article 125 (§ 6201 et seq.) and article 126 (§ 6301 et seq.) of the Education Law. Hostos Community College is a community college as defined by section 6202 (4) and section 6301 (2) of the Education Law.
Pursuant to section 6203, the corporate body then designated as the Board of Higher Education in the City of New York was continued and was redesignated as the City University of New York. Under section 6204 (1), the CUNY Board of Trustees shall govern and administer the City University. This subdivision further provides that the control of the educational work of CUNY shall rest solely in the board. It is required under section 6204 (3) (a) that all meetings of the board be held in accordance with the provisions of the Open Meetings Law. Among the powers and duties of the board of trustees, as set forth under section 6206 (7) (a) of the Education Law, are the establishment of positions, departments, divisions, and faculties; the establishment and conduct of courses and curricula; the setting of conditions for student admission, attendance, and discharge; and the regulation of tuition charges and fees.
II. Bylaws of the Board of Trustees of the City University of New York
Pursuant to section 8.6 of the bylaws of the Board of Trustees of CUNY, the faculty of a college within the CUNY system *21 shall meet at least once in each semester. The faculty shall be responsible for the formulation of policy relating to the admission and retention of students, student attendance including leaves of absence, curriculum, awarding of college credit, and the granting of degrees. This section of the bylaws also provides that the faculty shall conduct the educational affairs customarily cared for by a college faculty.
In section 8.7 of the bylaws of the board, it is provided that in every college where the number of faculty exceeds 100 members, there shall be a faculty council. It is undisputed that Hostos College has more than 100 faculty members. This section sets forth the composition of the council, which shall have all the responsibilities of the faculty. However, under section 8.14, it is stated that the provisions of a college governance plan shall supersede any inconsistent provisions contained in article VIII of the board’s bylaws.
Student disciplinary matters are the subject of sections 15.3 through 15.6 of the bylaws. Hearings are conducted before a faculty-student disciplinary committee, consisting of two faculty members, two student members and a chairperson (§ 15.5 [a]). The chairperson shall be selected by the president of the college, in consultation with the head of the campus governance body (§ 15.5 [b]). An appeal from the decision of the disciplinary committee may be made to the president of the college who may confirm or decrease the penalty but not increase it.
III. Charter of Governance of Hostos Community College
In the charter of governance of Hostos Community College, as approved by the CUNY Board of Trustees, the powers of the general faculty and the faculty council are delegated to the college senate, a college-wide representative body. The functions of the college senate are set forth in article I, § 1 of the charter. In section 2 of the charter, it is provided that the senate shall have the power to create any standing, ad hoc and special committees it deems necessary.
Article II of the governance charter pertains to the membership of the college senate. The court notes that during the 2000 to 2001 academic year the senate had included 42 faculty members, 13 student members, 4 nonteaching instructional staff members, and 7 nonvoting members from the administration.
Article II, § 11 (A) provides that the executive committee of the college senate shall be composed of nine voting senators, consisting of six faculty, two students, and one member of the *22 noninstructional staff. The functions of the executive committee are set forth in section 11 (B).
Article III of the governance charter pertains to senate meetings. Pursuant to section 2 (d), all votes shall be taken by secret ballot except for routine matters by unanimous consent. Article III, § 2 (e) provides that “all meetings of the Senate shall be open.”
Issues as to academic structure are addressed in article IV of the charter. Under section 1 of this article, Hostos Community College is composed of four divisions, each headed by a dean. This section provides that when adding to, or altering these divisions, the president of the college must first consult with the college senate. Pursuant to article IV, § 2, the senate shall have the power to review proposals for, and recommend, the creation of new academic units and/or programs of study, the elimination of existing academic units or programs of study, and the transfer of academic units and/or programs of study from one department to another.
Article VII of the governance charter relates to the issue of senate committees. The names of 15 specific standing committees, which include the executive committee, the committee on committees, the academic standards committee, the curriculum committee, and the scholarships and awards committee, are set forth in section 1 of article VII. Pursuant to section 4 (1) of article VII, the committee on committees shall be composed of nine senate members. Among the functions of the committee on committees, as set forth in section 4 (2), is the assignment of members to specific senate standing committees.
Pursuant to article VII, § 5 (2), the academic standards committee has the function of making recommendations to the senate on policy regarding maintenance of matriculation, academic index, grading structure and grade appeals, attendance, and related student appeals.
Under article VII, § 8, a curriculum committee is established. Among the functions of this committee, as set forth in section 8 (B), are to evaluate and recommend new courses in accordance with board guidelines, and to evaluate and recommend modifications of current courses.
The membership of the scholarships and awards committee is determined by the committee on committees. Pursuant to article VII, § 14 (B) (3), among the functions of this committee is the determination of the recipients of Hostos scholarships and prizes.
*23 Pursuant to article VIII, § 1 of the charter, motions to amend the charter may be proposed only by a member of the executive committee or by the written petition of no fewer than 10 senators. Under section 2, motions to amend must be discussed at two consecutive senate meetings before being brought to a vote. Such motions must be approved by two thirds of the total membership (§ 3). Under section 5, approved charter amendments shall be submitted to the president for approval and recommendation to the board of trustees.
It is noted that there does not appear to be a specific reference in the charter to the issue of the faculty-student disciplinary committee. As noted above, the bylaws of the CUNY Board of Trustees (§ 15.5) provide for the selection of the chairperson of the disciplinary committee by the college president after consultation with the head of the appropriate campus governance body, and for the election of the faculty members of the committee by the appropriate faculty body. Under the terms of the charter, it is apparent that the college senate would constitute the appropriate campus governance body and faculty body under the board’s pertinent bylaws.
TV. Related Case Law
General Provisions
There is no reported case determining the issue now before the court, namely, whether the college senate, and the executive committee thereof, of a college within the CUNY system is subject to the provisions of the Open Meetings Law and the Freedom of Information Law. It is well settled, however, that the provisions of the Open Meetings Law are to be liberally construed in order to promote the legislative intent that public business be conducted in an open and observable manner (Matter of Smith v City Univ. of N.Y., 92 NY2d 707 [1999]; Gordon v Village of Monticello, 87 NY2d 124 [1995]). It is also well established that the provisions of the Freedom of Information Law are to be construed liberally and its exemptions read narrowly in order to advance the statute’s goal to shed light on government decision making by granting to the public the maximum access to the records of government (Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410 [1995]; Matter of Russo v Nassau Community Coll., 81 NY2d 690 [1993]).
The Court of Appeals has held that the powers and functions of an entity must be derived from the laws of this state in order for it to be deemed a public body for purposes of the Open Meetings Law (Matter of American Socy. for Prevention of Cru *24 elty to Animals v Board of Trustees of State Univ. of N.Y., 79 NY2d 927 [1992]). The Court of Appeals has also stated, in Matter of Smith (supra at 714), that it is undisputed that the City University of New York derives its powers from state law and that it “surely is essentially a public body subject to the Open Meetings Law for almost any imaginable purpose.” CUNY has also been held subject to the provisions of the Freedom of Information Law (Kwasnik v City of New York, 262 AD2d 171 [1st Dept 1999]).
Advisory Bodies
In general, the courts have consistently held that an entity which serves in a solely advisory role is not a “public body” within the meaning of the Open Meetings Law (Goodson Todman Enters. v Town Bd. of Milan, 151 AD2d 642 [2d Dept 1989], lv denied 74 NY2d 614).
In at least two instances, meetings of an advisory body have been held subject to the provisions of the Open Meetings Law. In Matter of MFY Legal Servs. v Toia (93 Misc 2d 147 [Sup Ct, NY County 1977]), the meetings of the medical advisory committee were held subject to the Open Meetings Law. In that case, the trial court held that although the duty of the committee was solely to give advice which might be disregarded by the Commissioner of Social Services, the Commissioner might, in some instances, be prohibited from acting before he/she received that advice. The Supreme Court thus held that the giving of advice by the medical advisory committee was a necessary governmental function for the proper actions of the Department of Social Services.
In Matter of Syracuse United Neighbors v City of Syracuse (80 AD2d 984 [4th Dept 1981], appeal dismissed 55 NY2d 995 [1982]), the Appellate Division ruled that two advisory committees to the common council of the City of Syracuse were subject to the provisions of the Open Meetings Law. The Court held that although the two committees were created to be merely advisory in nature, their recommendations were adopted without exception. The Court concluded that to exempt these committees from the requirements of the Open Meetings Law would exalt form over substance.
Criteria for Evaluation
In Matter of Smith (supra), the Court of Appeals stated that in determining whether an entity is a public body within the meaning of the Open Meetings Law, various criteria are relevant. These criteria included the authority under which *25 the entity was created, the power distribution under which it exists, the nature of its role, the power it possesses and under which it purports to act, and a realistic appraisal of its functional relationship to affected parties and constituencies. In the Smith case, the Court of Appeals held that the College Association of La Guardia Community College, a CUNY college, was subject to the provisions of the Open Meetings Law. The association was comprised of administrators, faculty, and students. It was authorized to review proposed budgets for student activities, to allocate fees, and to authorize disbursements. The Court found the association to be a formally chartered entity with officially delegated duties and organizational attributes of a substantive nature and, accordingly, deemed it to be a public body performing a governmental function. It noted that the association was invested with decision-making authority to implement its own initiatives and that, as a practical matter, its recommendations and actions were executed unilaterally, or with mere perfunctory review. Thus, a decision by the association not to appropriate funds to an activity was tantamount to a final determination. The Court thus concluded that the association plainly functioned as much more than a mere advisory board, that it was powerfully and substantively autonomous, and that it clearly was not just a club or an extracurricular activity.
In an unreported case decided subsequent to Matter of Smith (supra), the Supreme Court, Richmond County, in Matter of Schuldiner v City Univ. of N.Y. (Index No. 8236/98, Sept. 13, 1999) held that the Association of the College of Staten Island, a college operated by CUNY, was subject to the provisions of the Open Meetings Law. The court stated that the issues raised in that case had been squarely and directly answered in favor of the petitioner by the Court of Appeals in Matter of Smith. In another unreported case decided subsequent to Matter of Smith, the Supreme Court, New York County, in Matter of Wallace v City Univ. of N.Y. (Index No. 102335/00, June 19, 2000), held that the University Student Senate, the official student government body of CUNY, performed a governmental function within the meaning of the Open Meetings Law and the Freedom of Information Law, at least with regard to the allocation of student activity fees. The court held that the decision of the senate to deny allocation of funds for a specific purpose amounted to a final determination of that issue since it could not be overruled by the Chancellor.
Power and Authority of CUNY Board
*26 Case law has also consistently recognized the ultimate power and authority of the CUNY Board of Trustees in the administration and governance of the CUNY system. In Matter of Polishook v City Univ. of N.Y. (234 AD2d 165 [1st Dept 1996]), the Court held that the board’s bylaws did not require it to consult with the senior college faculties prior to implementing long-range planning resolutions. The Court noted that the board was charged with governing and administering CUNY under Education Law § 6204 (1).
In Matter of Mendez v Reynolds (248 AD2d 62 [1st Dept 1998]), the Court considered a challenge by Hostos College students to a new graduation requirement which had been imposed by the CUNY Board of Trustees. The Court indicated that the petitioners did not challenge the ultimate authority of the board over curriculum and graduation requirements. The Court further noted that the board possessed the sole and exclusive statutory authority to impose graduation and course requirements for all CUNY colleges, pursuant to Education Law § 6204 (1) and § 6206 (7) (a).
In a case involving a budgetary dispute between the City of New York and the CUNY Board of Trustees, Matter of Perez v Giuliani (182 Misc 2d 398 [Sup Ct, NY County 1999]), the court noted that the State Legislature, to assure the autonomy of the CUNY system, had established an independent board of trustees. The court stated that the Legislature had explicitly vested the CUNY board with independent powers to govern and administer CUNY, under Education Law § 6204 (1), and had granted the board the power to establish courses and curricula and prescribe conditions of student admission, attendance, and discharge, pursuant to Education Law § 6206 (7) (a). Thus, in Perez v Giuliani, the court ruled that the budget provision adopted by the City of New York which conditioned payments to CUNY upon the board of trustees’ adoption of certain examination requirements was unlawful.
In an unreported opinion, the Supreme Court, New York County, in Matter of Friedman v Perez (Index No. 117248/00, Aug. 18, 2000), reaffirmed the ultimate power, authority, and responsibility of the CUNY Board of Trustees to govern and administer the university, including the setting of course requirements. The court noted that the board remained free to consider a curriculum proposal without regard to its origination.
Advisory Opinions of Committee on Open Government
In Kwasnik v City of New York (supra), the Appellate Divi *27 sion stated that courts should generally defer to the advisory opinions offered by the Committee on Open Government. However, in Matter of Buffalo News v Buffalo Enter. Dev. Corp. (84 NY2d 488 [1994]), the Court of Appeals noted that the advisory opinions of the Committee on Open Government are neither binding upon the agency nor entitled to greater deference in a CPLR article 78 proceeding than is the interpretation and construction of the agency.
Counsel Fees
The courts have consistently denied an award of attorneys’ fees and reasonable litigation costs under section 89 (4) (c) of the Public Officers Law, pertaining to alleged violations of the Freedom of Information Law, where the agency was found to have a reasonable basis in law for withholding the requested materials (see, for example, Matter of Canandaigua Messenger v Wharmby, 292 AD2d 835 [4th Dept 2002]; Matter of Hopkins v City of Buffalo, 107 AD2d 1028 [4th Dept 1985]). This court notes that under § 89 (4) (c), attorneys’ fees and costs may be assessed only where a court finds that the record involved was of clearly significant public interest and that the agency lacked a reasonable basis for denial of disclosure.
In cases involving the Open Meetings Law, it is well settled that not every violation of the statute triggers its enforcement sanctions of an award of cost and reasonable attorneys’ fees (Matter of Gordon v Village of Monticello, supra). Under the counsel fee provision of the Open Meetings Law (§ 107 [2]), costs and counsel fees may be awarded, in the discretion of the court, to the successful party. However, the additional requirements for an award of attorneys’ fees and costs under the Freedom of Information Law, namely, that the information withheld be of clearly significant public interest and that the agency lacked a reasonable basis for withholding the record, are not stated under the Open Meetings Law. Fixing the appropriate remedy for a violation of this statute is expressly a matter of judicial discretion (Matter of Goetschius v Board of Educ. of Greenburgh Eleven Union Free School Dist., 244 AD2d 552 [2d Dept 1997]).
It has been held that attorneys’ fees and costs are clearly warranted under the Open Meetings Law where the violations were found to be intentional and flagrant (Matter of Gordon, supra) or to constitute a persistent pattern of deliberate violations (Matter of Goetschius, supra). Purely technical and non *28 prejudicial infractions of the statute, or wholly unintentional violations have been held not to warrant an award of counsel fees and costs. However, there is no requirement that the violation be of a repeated or egregious nature (Matter of Gordon, supra; Auburn Publs,. v Netti, 229 AD2d 988 [4th Dept 1996]). A trial court’s award of attorneys’ fees and costs was disallowed as an abuse of discretion where the appellate court found that the agency being challenged had held the reasonable view that it was not a “public body” within the meaning of the Open Meetings Law (Matter of Canandaigua Messenger, supra).
Secret Balloting
Where the provisions of the Open Meetings Law and the Freedom of Information Law are found to be applicable, it has been held that the use of a secret ballot for voting purposes was improper. These statutes were both found to require open voting and a record of the manner in which each member voted (Smithson v Ilion Hous. Auth., 130 AD2d 965 [4th Dept 1987], affd 72 NY2d 1034 [1988]).
Contentions of the Parties
Petitioners contend that the Hostos College Senate performs a governmental function and constitutes a “public body” as defined by section 102 (2) of the Public Officers Law, and that thus the provisions of the Open Meetings Law are applicable. Petitioners thus submit that the meetings of the senate, as well as the meetings of its executive committee, must be open to the public.
Petitioners further argue that the college senate is an “agency” as defined by section 86 (3) of the Public Officers Law and is therefore subject to the terms of the Freedom of Information Law. It is petitioners’ contention that the provisions of both the Open Meetings Law and Freedom of Information Law prohibit the college senate from voting by secret ballot.
Petitioners submit that the college senate forms an integral part of the college governance process. It is urged that although the senate’s function as to proposed curriculum changes is couched in terms of recommendation, in actuality curriculum changes as proposed by the college senate are generally approved without discussion or debate. It is added that curriculum changes approved by the senate are often implemented and published in the Hostos College catalog of classes even before the items are passed by the board of trustees.
Petitioners note that the president of Hostos College cannot add to, or alter, the divisions of the college without first consult *29 ing with the college senate. They point to the fact that the senate must be represented on all committees established by the president to advance the mission of the college. Petitioners further submit that the power of the senate is seen in article VIII of the charter in which it is stated that motions to amend the charter may be initiated only by a member of the executive committee or by the written petition of no fewer than 10 senators.
Petitioners contend that the college senate is not merely an advisory body. They note the senate’s nonreviewable power to elect the nine members of the committee on committees. In a supporting affidavit submitted by Henry Lesnick, a professor at Hostos College and an elected member of the college senate for approximately 10 years, it is submitted that the members of the committee on committees select members of various other committees including the academic standards committee and the scholarships and awards committee. Professor Lesnick states that the academic standards committee decides student appeals in matters of graduation requirements, academic dismissal, matriculation requirements, and other academic matters, without further review. He further indicates that the scholarships and awards committee chooses the recipients of many awards and scholarships without review. Professor Lesnick adds that the committee on committees is also authorized to select six faculty members to serve on a panel from which members of the faculty-student disciplinary committee are chosen. The petitioners note that while a student has a right to appeal a decision by the faculty-student disciplinary committee, an acquittal is final and nonappealable and that the penalty imposed by such committee may not be increased on appeal.
In another supporting affidavit, Gerald Meyer, a professor at Hostos College and an elected member of both the college senate and the executive committee, states that both these bodies have quorum requirements which must be met before any votes are taken.
Finally, the petitioners argue that they are entitled to an award of costs and attorneys’ fees, under the terms of Public Officers Law § 107 (2) and § 89 (4) (c) and/or CPLR article 86. Petitioners submit that there is no requirement that the court make a finding of bad faith on the part of the respondents before imposing an award of counsel fees and litigation costs.
In opposition, the respondents contend that the Hostos College Senate is merely an internal deliberative body, exercising *30 solely advisory functions and lacking any authority to implement any of its recommendations. Respondents submit that the college senate does not perform any governmental function and thus does not constitute a “public body” within the purview of the Open Meetings Law. It is respondents’ position that the CUNY Board of Trustees has the ultimate decision-making power with respect to changes in curriculum, personnel and budget matters, and all other subjects upon which the college senate advises.
Respondents deny that curricula changes proposed by the college senate are routinely approved without any discussion by the CUNY Board. They also deny that any course has ever been listed in a catalog prior to board approval. Respondent Errico, the senate chair, asserts that during her years at Hostos, since 1989, the senate has never initiated curricula changes, or made any final curricula decisions. She adds that departmental requests for course revisions are reviewed by the senate, and if approved, are forwarded to the college’s Office of Student Affairs. Professor Errico continues that if the president approves the senate’s recommendations, they are passed along to the board.
Louise Mirrer, executive vice-chancellor for academic affairs of CUNY, also submitted an affidavit in which she details the steps to be followed before a curriculum change can be implemented. Proposals relating to routine changes are provided to board members a month prior to the board’s meeting and are also reviewed by the 19 members of the screening committee, who serve on the chancellor’s staff. Ms. Mirrer asserts that there is not "a single academic matter proposed by any constituent college that is not carefully reviewed by the board.
The respondents further argue that the senate’s executive committee does not perform any governmental function and acts solely to facilitate the work of the senate in its advisory capacity. Thus, respondents maintain that the executive committee of the college senate also does not constitute a “public body” within the meaning of the Open Meetings Law.
Respondents contend that neither the college senate nor its executive committee falls within the meaning of the term “agency” as defined by the Freedom of Information Law. Respondents note that petitioners have failed to make any specific document request. It is further argued that all records of the senate and its executive committee would constitute intra-agency materials that are not final agency policy or determinations and are thus exempt.
*31 Finally, the respondents submit that even if the court finds a violation of the Open Meetings Law or of the Freedom of Information Law there is no basis for an award of costs and attorneys’ fees because there is no showing that the respondents had acted in bad faith.
Discussion
The central issue in this matter is whether the college senate and the executive committee thereof are subject to the provisions of the Open Meetings Law and of the Freedom of Information Law. The Court of Appeals, in Matter of Smith v City Univ. (supra), has held that such a question turns solely on a statutory interpretation. As noted previously, the Court in Smith set forth certain criteria for determining whether an entity constitutes a “public body” for purposes of the Open Meetings Law, within the meaning of section 102 (2) of the Public Officers Law. These standards include the authority under which the entity was created, the power distribution or sharing model under which it exists, the nature of its role, the power it possesses and under which it purports to act, and a realistic appraisal of its functional relationship to affected parties and constituencies.
In the matter now before this court, it is clear that the Hostos College Senate was created pursuant to the provisions of the bylaws of the CUNY Board of Trustees, which provide for delegation of certain powers to a faculty or a faculty council, as well as pursuant to the charter of governance of Hostos College. Under the terms of the charter, the powers of the faculty and the faculty councils were transferred to the senate, as a college-wide representative body.
The college senate is thus a formally chartered entity, and as such has a number of officially delegated duties. These duties are broad and far reaching. For example, the charter, which in article I sets forth the functions of the college senate, establishes that the senate will, in consultation with the administration and other groups in the college, recommend policy on “all College matters”; that it shall serve in an advisory capacity and have representation on all committees established by the president or the deans of the college; that it shall have the power to formulate new policy recommendations and to review existing policies in extensive areas, including admission procedures and requirements, degree requirements, development of curricula, and budget and finance. The senate is further empowered to create any standing, ad hoc, and special committees which it deems necessary.
*32 The organizational attributes of the college senate are also of an extensive and substantive nature. The charter of governance provides that all senate and senate committee meetings shall be conducted according to the newest edition of Robert’s Rules of Order Newly Revised. In addition, articles II (membership in the college senate), III (senate meetings), and VII (senate committees) of the governance charter all pertain to the organizational structure and meeting requirements of the senate. The court notes that article III, § 2 (e) provides that all meetings of the senate “shall be open.” The charter does not provide a definition of the word “open” or set forth a clarification of this term.
Clearly, the majority of the powers delegated to the college senate are couched in terms of an advisory nature. For example, in article I, § 1 of the charter, it is provided that the senate will “recommend” policy on all college matters; that the senate shall be specifically responsible for the formulation of academic policy and for “consultative and advisory functions” related to college matters; that the senate shall serve in “an advisory capacity” and have representation on all committees established by the president or the deans; and that the senate shall have the power to “formulate new policy recommendations” in a variety of areas, including the development of curricula. In article IV, § 2, it is provided that the senate shall have the power to “review proposals for, and recommend” the creation of new academic units and/or programs of study. This court finds that, based upon the submitted papers and the oral argument, the petitioners have failed to substantiate their claim that the college senate’s proposals for curricula changes are routinely approved by the CUNY board in a mere cursory or “rubber-stamp” fashion. Furthermore, this court fully acknowledges the ultimate authority, power, and responsibility of the CUNY Board of Trustees in the administration and governance of the CUNY system, which power is firmly established in statute and duly recognized by case law.
It is also evident, however, that the college senate possesses powers and duties which cannot be described as merely advisory in nature. The college senate has the power to elect the nine members of the committee on committees, all of whom must be senate members (art VII, § 4). It is apparent that the academic standards committee, whose members are assigned by the committee on committees (art VII, § 5), determines student appeals relating to graduation and degree requirements, academic dismissals, and matriculation matters. The *33 scholarship and awards committee, whose members are also selected by the committee on committees, makes final determinations as to the recipients of Hostos scholarships and other prizes (art VII, § 14). The college senate also designates the panel from which faculty members of the faculty-student disciplinary committee are selected. While a student may appeal the decision of the faculty-disciplinary committee to the president of the college (CUNY Board of Trustees’ Bylaws § 15.4), the president may not increase the committee’s penalty, and acquittals are not subject to appeal.
In addition, under article IV, § 1 of the Hostos Governance Charter, the president of the college, before adding to or altering the four divisions of the college, must first consult with the senate. In the final article of the charter, article VIII, it is provided that any modification of the charter can only be initiated by a member of the senate’s executive committee or by the written petition of no fewer than 10 senators.
The executive committee of the college senate also has substantial organizational attributes, as set forth in article II, § 11 of the charter of governance. Among the functions of the executive committee are to schedule regular and special senate meetings; to prepare the agenda for senate meetings; to meet at least once a month during the academic year to coordinate and expedite senate business; to transact any business which may be necessary between meetings of the senate; to serve as liaison between the college president and the senate; and to create ad hoc committees after consultation with the senate. The functions and duties of the officers of the executive committee are also fully detailed. Both the college senate and the executive committee have quorum requirements for the conduct of business.
Determination
In light of the above, this court finds that the college senate and the executive committee thereof constitute integral components of the governance structure of Hostos Community College. The senate and its executive committee perform functions of both advisory and determinative natures which are essential to the operation and administration of the college. Certainly, these entities are not mere clubs or extracurricular activities. Accordingly, this court, mindful of the liberal construction to be afforded to the applicable statutes, determines that the college senate and its executive committee are public bodies performing governmental functions and come *34 within the purview of the Open Meetings Law and the Freedom of Information Law. This court notes that the advisory opinion of the Committee on Open Government has not been determinative of the issues before this court. This opinion, rendered by the executive director of the committee, was based upon an ex parte submission and is not entitled to any undue deference by this court (Matter of Buffalo News, supra).
In view of the above ruling, the application before this court is granted to the following extent. Judgment is granted declaring (1) that the Hostos College Senate and the Hostos College Senate Executive Committee are public bodies performing governmental functions within the meaning of section 102 (2) of the Open Meetings Law; (2) that the Hostos College Senate and its Executive Committee are agencies performing governmental functions within the meaning of section 86 (3) of the Freedom of Information Law; (3) that the respondents violated the Open Meetings Law by prohibiting the petitioners from attending the Hostos College Senate meeting of May 24, 2001 and the executive committee meeting of September 6, 2001; (4) that respondents violated the Open Meetings Law and Freedom of Information Law by voting by secret ballot at the May 24, 2001 meeting of the college senate and by failing to record the votes of the members of the college senate as required by sections 106 and 87 (3) (a) of the Public Officers Law; (5) that article III, § 2 (d) of the Hostos Governance Charter which requires the college senate to vote by secret ballot violates both the Open Meetings Law and the Freedom of Information Law and is therefore null and void; and ordering (1) that respondents shall conduct future meetings of the college senate and its executive committee in accordance with the terms of the Open Meetings Law; and (2) that the respondents shall keep records of the final votes of the Hostos College Senate and the senate’s executive committee as required by the Open Meetings Law and the Freedom of Information Law.
Petitioners’ request for an award of attorneys’ fees and costs under Freedom of Information Law § 89 (4) (c) is denied. The court finds that no award is warranted under this section as petitioners had not requested the disclosure of any particular record. Rather, petitioners’ claims under the Freedom of Information Law were of an indirect nature, pertaining to the lack of a record maintained as to voting at the senate and executive committee.
The court makes no determination at this time as to the petitioners’ request for an award of attorneys’ fees and costs *35 under Open Meetings Law § 107 (2). As set forth in the case law above, not every violation of the Open Meetings Law automatically triggers the imposition of the sanction provisions of section 107. Awards of attorneys’ fees and costs to a successful party are subject to the discretion of the court. However, the violation need not be of a flagrant, repetitive, and egregious nature to warrant an award of counsel fees and costs, nor must there be a showing of bad faith on the part of the respondents. The reasonableness of the position of the agency being challenged is a factor which may be considered by the courts.
On the record before this court, there has been no showing of bad faith or flagrant or egregious conduct on the part of the respondents. However, the record is incomplete on the issue of the reasonableness of the position adopted by the respondents which has been successfully challenged in this litigation. Accordingly, the issues relating (1) to whether the respondents had adopted a reasonable view in their position that the college senate and its executive committee were not "public bodies” within the context of the Open Meetings Law, and (2) to the amount of reasonable attorneys’ fees and costs, if any, to be awarded to the petitioners are referred to Special Referee John Buckley, to hear and report, with recommendations.