[840 NE2d 572, 806 NYS2d 460]

In the Matter of ANEUDIS PEREZ et al., Appellants, v CITY UNIVERSITY OF NEW YORK et al., Respondents.

Argued October 19, 2005; decided November 17, 2005

**POINTS OF COUNSEL**

*Ronald B. McGuire,* New York City, for appellants. I. The Court of Appeals has construed the Open Meetings Law and Freedom of Information Law broadly, consistent with the manifest public purpose of both statutes. (*Matter of Gordon v Village of Monticello,* 87 NY2d 124; *Matter of Buffalo News v Buffalo Enter. Dev. Corp.,* 84 NY2d 488; *Matter of Orange County Publs., Div. of Ottaway Newspapers v Council of City of Newburgh,* 45 NY2d 947; *Matter of Holden v Board of Trustees of Cornell Univ.,* 80 AD2d 378; *Matter of Smith v City Univ. of N.Y.,* 92 NY2d 707; *Matter of Csorny v Shoreham-Wading Riv. Cent. School Dist.,* 305 AD2d 83; *Matter of Weston v Sloan,* 84 NY2d 462; *Matter of Russo v Nassau County Community Coll.,* 81 NY2d 690; *Kwasnik v City of New York,* 262 AD2d 171.) II. The College Senate is a public body performing a government function under Public Officers Law (Open Meetings Law) § 102 (2). (*Matter of Smith v City Univ. of N.Y.,* 92 NY2d 707; *Matter of Mendez v Reynolds,* 248 AD2d 62; *Matter of Polishook v City Univ. of N.Y.,* 234 AD2d 165, 91 NY2d 867; *Goodson Todman Enters. v Town Bd. of Milan,* 151 AD2d 642, 74 NY2d 614; *Matter of Poughkeepsie Newspaper Div. of Gannett Satellite Info. Network v Mayor's Intergovernmental Task Force on N.Y. City Water Supply Needs,* 145 AD2d 65; *New York Pub. Interest Research Group v Governor's Advisory Commn. [Problems Relating to Liab. Ins.],* 133 Misc 2d 613, 135 AD2d 1149, 71 NY2d 964; *Matter of Syracuse United Neighbors v City of Syracuse,* 80 AD2d 984, 55 NY2d 995; *Matter of MFY Legal Servs. v Toia,* 93 Misc 2d 147; *Matter of American Socy. for Prevention of Cruelty to Animals v Board of Trustees of State Univ. of N.Y.,* 165 AD2d 561, 79 NY2d 927; *Matter of Daily Gazette Co. v North Colonie Bd. of Educ.,* 67 AD2d 803.) III. The College Senate is an agency as defined by Public Officers Law (Freedom of Information Law) § 86 (3). (*Matter of Citizens for Alternatives to Animal Labs v Board of Trustees of State Univ. of N.Y.,* 92 NY2d 357; *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale,* 87 NY2d 410; *Matter of Russo v Nassau County Community Coll.,* 81 NY2d 690; *Kwasnik v City of New York,* 262 AD2d 171; *Matter of Stoll v New York State Coll. of Veterinary Medicine at Cornell Univ.,* 94 NY2d 162; *Matter of Buffalo News v Buffalo Enter. Dev. Corp.,* 84 NY2d 488; *Matter of Russo v Nassau County Community Coll.,* 81 NY2d 690; *Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen,* 69 NY2d 246.) IV. The Open Meetings Law and Freedom of Information Law prohibit the College Senate from voting by secret ballot. (*Smithson v Ilion Hous. Auth.,* 130 AD2d 965.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Mordecai Newman* and *Larry A. Sonnenshein* of counsel), for respondents. I. The doctrine that advisory bodies lacking decision-making power are not subject to the Open Meetings Law remains uncontradicted at the appellate level. This doctrine reflects a balance between the competing values of transparent public decision making and the free and unconstrained rendering of advice. (*Matter of Orange County Publs., Div. of Ottaway Newspapers v Council of City of Newburgh,* 45 NY2d 947; *Matter of Poughkeepsie Newspaper Div. of Gannett Satellite Info. Network v Mayor's Intergovernmental Task Force on N.Y. City Water Supply Needs,* 145 AD2d 65; *New York Pub. Interest Research Group v Governor's Advisory Commn. [Problems Relating to Liab. Ins.],* 133 Misc 2d 613, 135 AD2d 1149; *Kingston Assoc. v LaGuardia,* 156 Misc 116, 246 App Div 803; *Matter of Smith v City Univ. of N.Y.,* 92 NY2d 707; *Goodson Todman Enters. v Town Bd. of Milan,* 151 AD2d 642, 74 NY2d 614; *Matter of Daily Gazette Co. v North Colonie Bd. of Educ.,* 67 AD2d 803; *Matter of American Socy. for Prevention of Cruelty to Animals v Board of Trustees of State Univ. of N.Y.,* 165 AD2d 561; *Matter of Syracuse United Neighbors v City of Syracuse,* 80 AD2d 984; *Matter of Polishook v City Univ. of N.Y.,* 234 AD2d 165.) II. Because it is essentially an advisory body with no final decision-making authority on public matters, the Hostos Senate falls outside the scope of the Open Meetings Law. (*Matter of Smith v City Univ. of N.Y.,* 92 NY2d 707; *New York Pub. Interest Research Group v Governor's Advisory Commn. [Problems Relating to Liab. Ins.],* 133 Misc 2d 613, 135 AD2d 1149, 71 NY2d 964; *Matter of Polishook v City Univ. of N.Y.,* 234 AD2d 165; *Matter of Mendez v Reynolds,* 248 AD2d 62; *Matter of Daily Gazette Co. v North Colonie Bd. of Educ.,* 67 AD2d 803.) III. The authority to appoint a panel from which a committee will be chosen is not a sovereign power, particularly when, as here, the committee to be chosen is itself not subject to the Open Meetings Law. (*Matter of Smith v City Univ. of N.Y.,* 92 NY2d 707; *Matter of Mary M. v Clark,* 100 AD2d 41.) IV. Having no decision-making authority, the Senate and Executive Committee are not "agencies" subject to the Freedom of Information Law (FOIL). Moreover, even if they are deemed to be agencies, their records would not reflect "final policy or determinations" and would not be subject to FOIL. (*Matter of Russo v Nassau County Community Coll.,* 81 NY2d 690; *Matter of Polishook v City Univ. of N.Y.,* 234 AD2d 165.)

**OPINION OF THE COURT**

Chief Judge KAYE.

Once again we are asked to determine whether certain entities within a public college—in this case, the Hostos Community College Senate and its Executive Committee—are subject to the Open Meetings Law. We also consider whether secret ballots by the College Senate are prohibited by either the Open Meetings Law or the Freedom of Information Law.

## I.

Hostos Community College is one of 19 colleges that comprise the City University of New York (CUNY). Pursuant to Education Law § 6204 (1), control of CUNY's educational work resides solely in its Board of Trustees. The Board can, among other things, establish departments, divisions and faculties; establish and conduct courses and curricula; and prescribe conditions of student admission, attendance and discharge (Education Law § 6206 [7] [a]). Under Education Law § 6204 (3) (a), CUNY Board meetings are subject to the Open Meetings Law.

The CUNY Board has enacted its own bylaws to facilitate its mission. Those bylaws govern all CUNY campuses and explicitly allow the individual colleges to implement their own governance plans, which supersede any inconsistent provision contained in CUNY's bylaws (CUNY Bylaws § 8.14). In its bylaws, the Board has delegated its authority under Education Law § 6206 (7) (a) in part to the faculty (or a faculty council) of the individual colleges, making the local faculty (or faculty councils) responsible "for the formulation of policy relating to the admission and retention of students including health and scholarship standards therefor, student attendance including leaves of absence, curriculum, awarding of college credit, granting of degrees" (CUNY Bylaws §§ 8.6, 8.7).

In lieu of the faculty council authorized by the CUNY bylaws, the Hostos Community College Governance Charter established a College Senate composed of full-time faculty members, nonteaching instructional staff, students, classified staff and the President and Deans of the College. The faculty, staff and student members are elected by their respective constituencies, faculty and staff to three-year terms and students to one-year terms. The Senate is to "recommend policy on all College matters . . . [and is] specifically responsible for the formulation of academic policy and for consultative and advisory functions related to the programs, standards and goals of the College" (Hostos Community College Governance Charter, art I, § 1).

The Governance Charter sets forth a noninclusive list of 14 areas of college policy, including curriculum and admission requirements, as to which the Senate is authorized to formulate new policy recommendations and review existing policies. The Charter prohibits additions or alterations to the divisions of Hostos Community College without the College Senate first approving those changes; and it provides that changes to the Charter may be proposed only by a member of the Executive Committee or a written petition signed by 10 members of the College Senate.

The nine members of the Executive Committee and the nine members of the Committee on Committees are elected from the College Senate. The Executive Committee organizes the work of the Senate by scheduling and preparing the agenda for Senate meetings and transacts necessary business between Senate meetings. The Committee on Committees assigns all of the members to the Senate's 13 remaining standing committees, including the Academic Standards Committee (which determines student appeals of academic dismissals or matriculation decisions), the Admissions Committee (which implements college admissions policies) and the Scholarships and Awards Committee (which selects recipients of the Hostos Scholarships and other prizes). Appointments to the standing committees and a number of the decisions issued by the committees are final and nonreviewable.

On May 24, 2001 petitioner Chong Kim, a Hunter College student, was denied entrance to a College Senate meeting during which several changes in the college curriculum were approved by secret ballot. On September 6, 2001 petitioner Aneudis Perez, a Hostos Community College student, was denied entrance to an Executive Committee meeting; Perez tried to hand an Executive Committee member a petition regarding an incident that had arisen months earlier during a political protest on campus. Neither of the two meetings had moved into executive session, though had the Senate or the Executive Committee needed to discuss confidential matters it could have done so (see Public Officers Law § 105).

Petitioners initiated a CPLR article 78 proceeding, arguing that the College Senate and the Executive Committee were subject to the Open Meetings Law and the Freedom of Information Law. Supreme Court granted the petition, but the Appellate Division reversed, concluding that the Senate was only an advisory body and thus outside the purview of the Open Meet-

ings Law and the Freedom of Information Law. We agree with Supreme Court and now reverse the Appellate Division order and reinstate the judgment of Supreme Court.

## II.

In enacting the Open Meetings Law, the Legislature sought to ensure that "public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy" (Public Officers Law § 100). Similarly, the Legislature intended the Freedom of Information Law to guarantee "[t]he people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations" (Public Officers Law § 84).

Thus, all "public bodies" are subject to the Open Meetings Law and all "public agencies" are subject to the Freedom of Information Law. Both provisions define, in part, organizations within their ambit as those that perform a "governmental function" (Public Officers Law § 86 [3]; § 102 [2]). And in applying these laws, we construe their provisions liberally in accordance with their stated purposes (*see Matter of Gordon v Village of Monticello*, 87 NY2d 124, 127 [1995]; *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d 410, 418 [1995]).

While an entity must be authorized pursuant to state law to be within the ambit of the Open Meetings Law and the Freedom of Information Law, not every entity whose power is derived from state law is deemed to be performing a governmental function. Certainly not all advisory bodies that issue recommendations to state agencies are performing governmental functions for purposes of compliance with the Open Meetings Law. Rather, in each case the court must undertake an analysis that centers on "the authority under which the entity was created, the power distribution or sharing model under which it exists, the nature of its role, the power it possesses and under which it purports to act, and a realistic appraisal of its functional relationship to affected parties and constituencies" (*Matter of Smith v City Univ. of N.Y.*, 92 NY2d 707, 713 [1999]).

In *Smith*, for example, this Court concluded that the Fiorello H. LaGuardia Community College Association, Inc.—a group of administrators, faculty members and students authorized to al-

locate student activity fees to various campus entities—exercised a quintessentially governmental function and was thus subject to the Open Meetings Law. The association not only drew its powers from state law but also was a "formally chartered entity with officially delegated duties and organizational attributes of a substantive nature" (*id.* at 714). The group's governmental function was further evidenced by its operation "under protocols and practices where its recommendations and actions [were] executed unilaterally and finally, or receive[d] merely perfunctory review or approval" (*id.*).

Here, we are persuaded that the College Senate and its Executive Committee similarly are exercising a quintessentially governmental function.

The College Senate's organizational structure is set forth in the Governance Charter, which mandates that the Senate conduct business only if a quorum is present and that the Senate and its committees conduct meetings pursuant to Robert's Rules of Order Newly Revised. The members of the Senate elect representatives to the Committee on Committees, which has sole, nonreviewable authority to select members to the College Senate's other standing committees, some of which exercise nonreviewable power regarding disciplinary findings and punishments, academic disputes and scholarship awards. The Executive Committee schedules regular and special Senate meetings, determines what is appropriate Senate business, sets the agenda for the Senate meetings and conducts all business between Senate sessions.

Key to our conclusion in this case is the record evidence that the College Senate (which includes its Executive Committee) has been charged with a number of the responsibilities delegated by the Legislature to the CUNY Board and that the Senate functions as a proxy for the faculty councils authorized by the CUNY bylaws. The Senate is to recommend policy on all college matters to the Board. The Senate is explicitly imbued with the power to formulate new policy recommendations and review existing policies, forwarding those recommendations to the Board of Trustees in areas as far-reaching as college admissions, degree requirements, curriculum design, budget and finance; it is represented on all committees established by the College President or Deans; it is to review proposals for and recommend the creation of new academic units and programs of study; it must be consulted prior to any additions or alterations to the College's divisions; and it is the only body that can initiate changes to the College Governance Charter.

Under CUNY's comprehensive university governance scheme, the College Senate is the sole legislative body on campus authorized to send proposals to the CUNY Board of Trustees, and although the policy proposals must first be approved and forwarded by the College President, they overwhelmingly are. While the CUNY Board retains the formal power to veto recommendations of the College Senate, that does not in and of itself negate the Senate's policy-making role or render the Senate purely advisory. Realistically appraising the Senate's function, we conclude that the Appellate Division erred in holding that the Senate was only an advisory body (contrast *Matter of Snyder v Third Dept. Jud. Screening Comm.*, 18 AD3d 1100 [3d Dept 2005] [proceedings of Judicial Screening Committee not subject to the Freedom of Information or Open Meetings laws because its role is limited to providing information to appointing authority]). As Supreme Court held, "the college senate and the executive committee thereof constitute integral components of the governance structure of Hostos Community College. The senate and its executive committee perform functions of both advisory and determinative natures which are essential to the operation and administration of the college" (195 Misc 2d 16, 33 [Sup Ct, Bronx County 2002]).

Whether the votes of the College Senate may be by secret ballot, however, is a separate question.

The Open Meetings Law does not speak to balloting or voting procedures, requiring only that "[m]inutes shall be taken at all open meetings of a public body which shall consist of a record or summary of all motions, proposals, resolutions and any other matter formally voted upon and the vote thereon" (*see* Public Officers Law § 106 [1]). A final determination may easily be recorded in the meeting's minutes without an accounting of each participant's ballot. Though we construe the provisions of the Open Meetings Law liberally, we will not add a requirement to the text of the statute.

█ Under the Freedom of Information Law, however, a public agency must maintain "a record of the final vote of each member in every agency proceeding in which the member votes" (Public Officers Law § 87 [3] [a]). This requirement differs from the summary of a final vote mandated by the Open Meetings Law. The requisite record of the final vote of each member would be impossible were the final vote of each member anonymous or secret. Consequently, under the Freedom of Information Law, voting by the College Senate and the Executive Committee may not be conducted by secret ballot.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order reversed, etc.