OPINION OF THE COURT
Johnny L. Baynes, J.
The petitioners herein, the New York State Nurses Association, 1199 SEIU United Healthcare Workers East, Concerned Physicians of LICH, LLC, and Kathleen Campbell, commenced the within CPLR article 78 proceeding and moved by order to show cause dated the 20th of February, 2013, for an order restraining the respondents, State University of New York and Trustees of State University of New York, from executing and implementing the approval of the Board of Trustees of the State University of New York for closure of Long Island College Hospital (hereinafter LICH).
The petitioners have submitted, along with their order to show cause, a verified petition seeking injunctive and declaratory relief under the Open Meetings Law and article 78; the affirmation of Richard M. Seltzer in compliance with section 202.7 of the Uniform Civil Rules for the Supreme Court and the County Court (22 NYCRR) and the exhibits annexed thereto; the affidavit of John Romanelli, M.D.; the affidavit of Kelvin Godreau; the affidavit of Julie T. Semente; the affidavit of Jaecean Wilson; the affidavit of Kathleen Campbell; and a memorandum of law in support of petition for injunctive and declaratory relief under the Open Meetings Law and article 78.
In response, respondents submitted the affidavit of Zulaika Rodriguez-Awoliyi; the affidavit of John Williams; the affidavit of Lora Lefebvre; and respondents’ memorandum of law in opposition to petitioners’ motion for preliminary injunctive relief brought by order to show cause dated February 20, 2013.
Petitioners thereafter submitted the supplemental affirmation of Richard M. Seltzer and reply memorandum of law in support of petition for injunctive and declaratory relief under the Open Meetings Law and article 78.
Petitioner New York State Nurses Association (hereinafter NYSNA) is the collective bargaining representative of ap *590 proximately 400 registered nurses employed at Long Island College Hospital.
Petitioner 1199 SEIU United Healthcare Workers East is the collective bargaining representative of approximately 1,000 clerical, technical, professional and service health care workers employed at LICH.
Petitioner Concerned Physicians of LICH, LLC, is a limited liability corporation, comprised of the attending physicians of LICH. The organization was created subsequent to the meetings held herein which form the basis of the petition.
Petitioner Kathleen Campbell, the individual petitioner, is a resident of New York, employed as a political and community organizer for NYSNA.
Respondent State University of New York (hereinafter SUNY) is the state university system serving and operated by the State of New York.
Respondent Board of Trustees (hereinafter BOT) is SUNY’s governing body, consisting of 18 members, 15 of whom are appointed by the Governor of the State of New York, with the advice and consent of the New York State Senate. The president of the student assembly also serves as student trustee, and the presidents of the University Faculty Senate and Faculty Council of Community Colleges serve as ex officio trustees.
The undisputed facts are as follows:
On February 7, 2013, at 1:00 p.m., the BOT convened a meeting of the SUNY Academic Medical Centers/Hospital Committee (hereinafter the Committee) at SUNY’s College of Optometry in Midtown Manhattan to discuss whether to close LICH. The agenda for that meeting, exhibit 6 to the affirmation of Richard M. Seltzer, states the following will occur at the meeting:
“1. Call to Order John Murad, Chair
“2. Approval of Minutes, of January 15, 2013 meeting
“3. Executive Session
“4. Motion to Adjourn
“It is anticipated that the Chair of the Board may call for a motion to convene an Executive Session under provisions of Section 105 of Article 7 of the Public Officers Law.” (Exhibit 6, affirmation of Richard M. Seltzer.)
While the agenda made no mention of the closing of LICH, all parties agree that the fact that the subject of the meeting was the closure of LICH was the subject of much media speculation.
*591 The meeting was held in a conference room which held only 60 members of the public while approximately 125 members were turned away and unable to attend. The Committee meeting was attended by 11 members of the BOT. In addition to four members of the Committee who are trustees, seven other trustees were also in attendance.
A few minutes into the meeting, the chair called for a motion to convene an executive session “to discuss matters identified in Public Officers Law Section 105, including subsections e, f and h, and Public Officers Law Section 108.” There was no further elaboration from the chair. A motion was made and seconded for the Committee to move to executive session and the balance of the February 7, 2013 meeting was conducted in executive session.
There is no dispute that the BOT and all meetings held by it are subject to the Open Meetings Law. In fact, SUNY has publicized its policy of compliance with the Open Meetings Law.
Immediately following the executive session, which lasted approximately two hours, the BOT convened in a much larger room in SUNY’s College of Optometry in Midtown Manhattan. At this point, public comments were taken on the topic of the closing of LICH.
The following day, February 8, 2013, the BOT reconvened and, this time, adopted a resolution authorizing “the President of SUNY Downstate Medical Center to seek approval from the Commissioner of the Department of Health to cease operation of LICH.”
Thereafter, on February 20, 2013, John F. Williams, M.D. (hereinafter Williams), the president of SUNY Downstate Medical Center, which has been designated by the BOT as the governing body of LICH under 10 NYCRR 405.2 (b) (1), gave formal written notice to the Department of Health (hereinafter DOH) of his intention to close LICH and discontinue all services specified in the hospital’s operating certificate, with a proposed closure date of May 21, 2013. (Williams aff ¶ 9.)
The foregoing facts are undisputed. There is an issue of fact as to whether LICH prematurely took steps to wind down prior to the approval of the DOH. The answer to this particular question is not necessary in the context of whether respondents have or have not violated the provisions of the Open Meetings Law.
Petitioners contend that respondents violated the Open Meetings Law, Public Officers Law § 101 et seq., and that as a result, *592 its determination to close Long Island College Hospital should be a nullity. There is no dispute between the parties that the Open Meetings Law applies to the matter sub judice. Respondents contend they have complied with all of the requirements of that statute.
The Open Meetings Law was created to mandate transparency in the operation of government and its entities. In this way, the public is informed and decision-making cannot occur in secret. In Matter of Perez v City Univ. of N.Y. (5 NY3d 522 [2005]), the Court of Appeals stated:
“In enacting the Open Meetings Law, the Legislature sought to ensure that ‘public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy’ (Public Officers Law § 100).” (5 NY3d at 528.)
In order to ensure compliance with the Open Meetings Law, “[t]he Legislature has granted the courts the discretionary power, upon good cause shown, to declare void any action taken by a public body in violation of the Open Meetings Law.” (See Matter of Cunney v Board of Trustees of the Vil. of Grand View, N.Y., 72 AD3d 960, 961-962 [2d Dept 2010]; see also Matter of New York Univ. v Whalen, 46 NY2d 734, 735 [1978].) In Cunney, the Court found that while there were technical violations of the Open Meetings Law, those violations appeared to be nothing more than mere negligence. That is not the case in this particular matter. Respondents are not unsophisticated. They have acknowledged their obligations pursuant to the Open Meetings Law.
Public Officers Law § 105 provides, in pertinent part, that
“1. [u]pon a majority vote of its total membership, taken in an open meeting pursuant to a motion identifying the general area or areas of the subject or subjects to be considered, a public body may conduct an executive session for the below enumerated purposes only, provided, however, that no action by formal vote shall be taken to appropriate public moneys.”
The notice given by the respondents relied upon paragraphs (e), (f), and (h) of that law which set forth the following enumerated purposes:
*593 “e. collective negotiations pursuant to article fourteen of the civil service law;
“f. the medical, financial, credit or employment history of a particular person or corporation, or matters leading to the appointment, employment, promotion, demotion, discipline, suspension, dismissal or removal of a particular person or corporation; . . .
“h. the proposed acquisition, sale or lease of real property or the proposed acquisition of securities, or sale or exchange of securities held by such public body, but only when publicity would substantially affect the value thereof.”
It is undisputed that no notice was given that publicity would substantially, or even minimally, affect the value of any property.
There was no further specificity in the notice given by the respondents than referencing the above paragraphs (e), (f) and (h). In furtherance of this notice, a meeting of the Academic Medical Centers and Hospitals Committee of SUNY was convened at 1:00 p.m. on February 7, 2013 at SUNY’s College of Optometry in Midtown Manhattan. Despite the vague nature of the notice, the meeting was held to discuss the closure of LICH. It should be noted, however, that the purpose of the meeting had been publicized in the media despite the vagueness of the notice. (Affirmation of Richard M. Seltzer ¶ 18.) Approximately 60 people of the hundreds who attended the aforementioned meeting were permitted entry into the conference room where the Committee had gathered, despite the availability of a large auditorium which would have accommodated those who wished to observe the proceedings.
It is uncontroverted that, after the Committee meeting was called to order, the chair, John Murad, announced that “issues” regarding LICH would be discussed. The meeting of the Committee was, at all times, subject to Public Officers Law § 102 (2). (See Matter of Orange County Publs., Div. of Ottaway Newspapers v Council of City of Newburgh, 60 AD2d 409, 416-418 [2d Dept 1978], affd 45 NY2d 947 [1978].) Almost immediately after the meeting of the Committee began, the chair called for a motion to convene an executive session to discuss the items set forth in the notice and designated only by paragraphs (e), (f) and (h) of Public Officers Law § 105 (1), set forth above.
*594 Respondents contend that adequate public notice was given of the Committee meeting, including a notice that an executive meeting would be convened. In support of that proposition, respondents rely on Matter of Stephenson v Board of Educ. of the Hamburg Cent. School Dist. (31 Misc 3d 1227[A], 2011 NY Slip Op 50865[U] [Sup Ct, Erie County 2011]), which provides:
“The motion to go into an executive session must have a reason stated. Public Officers Law Section 105 provides eight topics that can be discussed in the executive session. For example, the reasons can be ‘to discuss litigation’, ‘to discuss a particular personnel matter’ or ‘to discuss labor matters’. There is no requirement that it be more specific such as to ‘discus litigation concerning Jane Doe.’ ” (2011 NY Slip Op 50865[U] at *3.)
And while that statement is correct, the court in Stephenson, in fact, found that the respondents had violated the Open Meetings Law, stating
“It is necessary to set forth the reason for the executive session as a guidepost to Board members that other matters are not to be discussed in the executive session no matter how tempting it is to discuss other issues once they are in an executive session. The motion reminds everyone that the executive session is only on that issue mentioned in the motion.” (2011 NY Slip Op 50865[U] at *3.)
The motion to go into executive session in this case did nothing more than site the statutory provisions previously mentioned. No mention was made of LICH and there was nothing at all to tell the Committee the limits of their discussions. As in Stephenson, the notice was flawed and failed to meet the transparency requirements of the Open Meetings Law. In fact, the vagueness of the motion here, in conjunction with the skeletal statement of purpose in the written agenda for the meeting of the Committee, seems intentionally designed to shield the purpose of the meetings from the general public and obstruct the transparency required by the Open Meetings Law.
In accordance with the Open Meetings Law, a public body is not permitted to conduct business in executive session absent a motion identifying the general area of the subject or subjects to be discussed. It must act with transparency. The statute contemplates that specificity in order to avoid committees resorting to executive session when they don’t want the public to be able to participate in matters of public concern. For this *595 reason, it is the court’s responsibility to “scrutinize the propriety of executive sessions.” (Matter of Brander v Town of Warren Town Bd., 18 Misc 3d 477, 486 [Sup Ct, Onondaga County 2007]; see also Weatherwax v Town of Stony Point, 97 AD2d 840, 841 [2d Dept 1983].)
Thus, as the Third Department set forth in Matter of Gordon v Village of Monticello (207 AD2d 55, 58 [1994], revd in part on other grounds 87 NY2d 124 [1995]), moving to executive session “must be accomplished with some degree of particularity.” The Third Department in Gordon went on to say that “[although a violation of the Open Meetings Law does not automatically trigger injunctive relief, it is well settled that courts are empowered, as a matter of discretion and for good cause shown, to void any action taken by a public body in violation of Public Officers Law article 7” (207 AD2d at 59 [citations omitted]).
The stated purpose of the executive session in Gordon involved “a legal issue, a personnel issue, and a contract issue.” (207 AD2d at 56.) That notice, which the Court struck down, was more explicit than the general notice before this court, which did nothing more than quote the statutory provisions of the Open Meetings Law. Someone seeing the notice at issue in this case alone, without knowing of the media coverage, would have no idea what issues were being discussed by the Committee. That is unacceptable regardless of which side of an issue one is inclined to support. The court is, therefore, unable to sustain the determination of the respondents.
Finally, respondents rely on Roberts v Health & Hosps. Corp. (87 AD3d 311, 317-320 [1st Dept 2011]) for the proposition that petitioners lack standing to assert the claims herein. This court disagrees. In Roberts, the claim was brought pursuant to 10 NYCRR 405.24, which was intended to protect patient care. None of the petitioners in Roberts were patients. The instant case was commenced under the Open Meetings Law which is intended to protect the public from government secrecy and to foster transparency in the decision-making process of governmental entities. This court does not believe there is any question that petitioners have standing to assert the claims herein, both as members of the public and as parties who will be affected by the decisions made by the BOT.
It is this court’s determination that respondents’ notice was so intentionally vague as to shield the public from the true purpose of the meetings of both the Committee and the executive session which followed and failed to meet the standard for *596 transparency required by the Open Meetings Law. Moreover, the timing of entry into executive session almost immediately after commencing the meeting of the Committee, without any specificity as to the purpose of the executive session, appears also to be specifically designed to deny the public the transparency guaranteed by the Open Meetings Law. Thus, good cause has been shown for this court to exercise its discretion and annul the determination of the respondents.
As a result of the foregoing, there is no need for the court to address the other issues raised in the moving and responsive papers.
Wherefore, it is hereby ordered and adjudged that the petition is granted and the determination of the respondents is annulled and respondents are enjoined from proceeding with the plan to close LICH until such time as they comply with the mandates of the Open Meetings Law and all other applicable statutory provisions.
In light of the foregoing, the request for a preliminary injunction is denied as moot.